**No. 22-55908**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

Health Freedom Defense Fund *et al.*,

*Plaintiffs-Appellants*,

v.

Megan K. Reilly *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-08688-DSF-PV
Hon. Dale S. Fischer

_____

**APPELLANTS' OPENING BRIEF**

_____

John W. Howard (Cal. Bar No. 80200)
Scott J. Street (Cal. Bar No. 258962)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: 619-234-284
Email:
johnh@jwhowardattorneys.com
sstreet@jwhowardattorneys.com

*Attorneys for Appellants Health Freedom
Defense Fund et al.*

# DISCLOSURE STATEMENT

Plaintiff Health Freedom Defense Fund, Inc., is a nonprofit public benefit corporation formed under the laws of the State of Wyoming. It does not have a parent corporation nor does any publicly held corporation own ten percent or more of its stock.

Date: January 3, 2023

JW HOWARD/ATTORNEYS, LTD.


/s/ John W. Howard
John W. Howard
Scott J. Street
*Attorneys for Appellants Health Freedom Defense Fund et al.*

## TABLE OF CONTENTS

INTRODUCTION……………………………………….………,……..……..1

JURISDICTIONAL STATEMENT…………………………..……..………...5

STATUTORY AND CONSTITUTIONAL PROVISIONS………………….…5

ISSUE PRESENTED……………………………………………………………5

STATEMENT OF THE CASE……………………………………….………..6

SUMMARY OF THE ARGUMENT…………………………………….…….9

STANDARD OF REVIEW…………………………………………….…...10

ARGUMENT……………………………………………………………11

      A.     The Complaint Alleged that the Covid-19 Shots Are Medical
Treatments and that LAUSD Did Not Have a Legitimate Public
Health Reason to Require that Its Staff Take Them. ……………..11

      B.     The Balancing Test the Supreme Court Envisioned
for this Substantive Due Process Claim Cannot Be Done
on the Pleadings …………………………………………………..19

      C.     The Complaint Also Adequately Alleged that LAUSD's Covid
Vaccine Policy Violated the Equal Protection Clause……………..24

CONCLUSION………………………………………………….………..…28

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………11

*Buck v. Bell*, 274 U.S. 200 (1927) ……………………………………3, 4, 23, 24

*Caviezel v. Great Neck Public Schools*, 500 F. App'x 16 (2d Cir. 2012)….……..19

*Compassion in Dying v. State of Wash.*,

    79 F.3d 790 (9th Cir. 1996)........................................................13, 17, 19, 21

*Compton Unified School Dist. v. Addison*, 598 F.3d 1181 (9th Cir. 2010)……….10

*Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014)………………………………...12

*Cruzan v. Director of Missouri Department of Health*,

    497 U.S. 261 (1990)…………………………………………..3, 9, 12, 15, 17

*Daniels v. Williams*, 474 U.S. 327 (1986)………………………………...11

*Dunn v. White*, 880 F.2d 1188 (10th Cir. 1989)……………………………..18

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989)…………....10

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004)……………….…10

*Eng. v. Town of Huntington*, 448 F.2d 319 (2d Cir. 1971)………………………..18

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009)…………………………………23

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)……………………………..24

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009)………………………………..10

*Gargiul v. Tompkins*, 704 F.2d 661 (2d Cir. 1983)…………………………………18

    cert. granted, judgment vacated, 465 U.S. 1016 (1984)

*Gill v. Off. of Pers. Mgmt.*, 699 F. Supp. 2d 374 (D. Mass. 2010)……………22, 25

*Golinski v. U.S. Office of Pers. Mgmt.*,

    824 F. Supp. 2d 968 (N.D. Cal. 2012) …………………...…..21, 25, 27

*Gonzales v. Carhart*, 550 U.S. 124 (2007)………………………………..16

iii

*Griswold v. Connecticut*, 381 U.S. 479 (1965)……………………………………...14

*Guertin v. State of Michigan*, 912 F.3d 907 (6th Cir. 2019)…………………...2, 17

*Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*,

    590 F. Supp. 3d 1253 (D. Idaho 2022)…………………………………..12

*Heller v. Doe by Doe*, 509 U.S. 312 (1993)…………………………………..22, 25

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)…………………...2-4, 9, 13-22, 28

*Kelley v. Johnson*, 425 U.S. 238 (1976)………………………………………..15

*Massachusetts v. U.S. Dep't of Health & Hum. Servs.*,

    682 F.3d 1 (1st Cir. 2012)…………………………………………...2, 17, 22

*Mathews v. De Castro*, 429 U.S. 181 (1976)…………………………………..25

*Missouri v. McNeely*, 569 U.S. 141 (2013)………………………………………...2

*O'Connor v. Donaldson*, 422 U.S. 563 (1975)…………………………………15

*Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015)…………………………...19

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992)………...………14, 20

*Poe v. Ullman*, 367 U.S. 497 (1961)……………………………………………...14

*Rivas v. United States*, 368 F.2d 703 (9th Cir.1966)………………….………..17

*Roe v. Wade*, 410 U.S. 113 (1973)……………………………………..3, 13, 14, 24

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)……………...15

*Romer v. Evans*, 517 U.S. 620 (1996)…………………………………………….25

*San Francisco Shopping News Co. v. City of S. San Francisco*,

    69 F.2d 879 (9th Cir. 1934)…………………………………………...16

*Schmerber v. California*, 384 U.S. 757 (1966)…………………………………17

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)…………………………………..11

*Stenberg v. Carhart*, 530 U.S. 914 (2000)…………………………………....3

*Thornburgh v. American College of Obstetricians & Gynecologists*,

iv

476 U.S. 747 (1986)……………………………………………………..16

*Trump v. Hawaii*, __ U.S. __, 138 S. Ct. 2392 (2018)……………………………21

*Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250 (1891)…………………………..2

*United States v. Ayala-Bello*, 995 F.3d 710 (9th Cir. 2021)………………………23

*Washington v. Glucksberg*, 521 U.S. 702 (1997)…………………………………11

*Williams v. Santiago*, No. 116-CV-01065-MJSPC,

2016 WL 6494268, (E.D. Cal. Nov. 1, 2016)……………………………...21

*Winters v. Miller*, 446 F.2d 65 (2d Cir. 1971)……………………………………18

*Workman v. Mingo County Board of Education*,

419 F. App'x 348 (4th Cir. 2011)…………………………………………..19

## **Statutes**

Fed. R. App. P. 4(a)(2)…………………………………………...5

Fed. R. Civ. P. 12(c) ……………………………………….10

28 U.S.C. § 1291……………………………………..5

28 U.S.C. § 1331……………………………………..5

28 U.S.C. § 1367……………………………………..5

**<u>Other</u>**

Robert L. Burgdorf & Mary Pearce Burgdorf, …………………………………24

   *The Wicked Witch Is Almost Dead: Buck v. Bell and the*

   *Sterilization of Handicapped Persons*, 50 Temp. L.Q. 995 (1977)

Robert J. Cynkar, *"Felt Necessities" v. Fundamental Values?*

   81 Colum. L. Rev. 1418 (1981)…………………………………………24

L. Tribe, *American Constitutional Law* (1978)…………………………………18

## INTRODUCTION

This case challenges a mandatory Covid-19 vaccination policy under the United States Constitution. The policy was issued by the Los Angeles Unified School District, the country's second largest public school district. It required that thousands of school employees inject themselves with the Covid-19 shot, over their objection. Those who did not comply could lose their jobs. More than a thousand people have lost their jobs due to the policy.

That decision was arbitrary. By the time it issued the policy—after rescinding its first policy during an earlier lawsuit—the district knew that the Covid-19 shot did not prevent people from becoming infected with or spreading the virus that causes Covid-19. According to most official sources, the most the shot could arguably do was to reduce an infected person's symptoms. Thus, it is a therapeutic, no different than taking an aspirin or other medicine to reduce the symptoms of illness. Like any medicine, the Covid-19 shot has potential side effects. Thus, millions of people have declined to take the shot, including the individual plaintiffs in this lawsuit, who worked for LAUSD and who were fired from their jobs because they declined to inject themselves with the Covid-19 shots, as the district ordered them to do.

The Constitution gives them that right. The Supreme Court has recognized the right to bodily integrity as one of the most fundamental rights known to man.

1

Indeed, it has been called "first among equals". As the Supreme Court has said: 'No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.'" *Guertin v. State of Michigan*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). Indeed, the Supreme Court has "never retreated … from [its] recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests." *Missouri v. McNeely*, 569 U.S. 141, 159 (2013). For more than a hundred years, the Supreme Court has applied meaningful judicial review to government actions that invaded this right to bodily integrity. It did so even before creating the modern tiers of constitutional scrutiny.

During the early twentieth century, the Supreme Court delivered an opinion, *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which upheld a mandatory smallpox vaccine policy issued by the City of Cambridge, Massachusetts, during a smallpox outbreak. It did so because city officials enacted the policy to prevent the spread of smallpox, a devastating disease, and because the city had evidence that the smallpox vaccine curbed the spread of the disease. Thus, the policy bore a reasonable relationship to the city's public health goals.

*Jacobson* was decided at a time when compulsory vaccination laws were common, even for adults, and governments regularly used their police power to punish people who did not comply with public health orthodoxy. Perhaps the most notorious example of this was *Buck v. Bell*, 274 U.S. 200 (1927), in which the Court upheld the forced sterilization of a young woman. According to Justice Oliver Wendell Holmes: "The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes. Three generations of imbeciles are enough." *Id.* at 207 (citing *Jacobson*).

Fortunately, this practice of using the police power to promote public and private health practices faded after World War II. Compulsory vaccination laws were largely relegated to public elementary schools and, even then, families could decline the shots for religious or medical reasons. Meanwhile, during the 1970s, the Supreme Court expanded its interpretation of the constitutional right to privacy, leading it to conclude that Americans have a "general liberty interest in refusing unwanted medical treatment." *Cruzan v. Director of Missouri Department of Health*, 497 U.S. 261, 278 (1990).

The Court's abortion cases, starting with *Roe v. Wade*, 410 U.S. 113 (1973), and running through *Stenberg v. Carhart*, 530 U.S. 914 (2000), echoed this principle. They contained soaring rhetoric about the importance of the right to privacy; the importance of bodily autonomy. That, no doubt, is why cases like

3

*Jacobson* and *Buck* had become historical artifacts by 2020, rarely cited and even more rarely relied upon considering the century of development in constitutional law.

That all changed during 2020, as courts reflexively and mechanically applied *Jacobson* to bar virtually any challenge to any public health policy. That is what the District Court did here. It ignored Appellants' allegation that the Covid-19 shots do not prevent the spread of Covid-19 and thus must be considered as a private health matter - compulsory medication - not a public one. It ignored the Supreme Court's robust privacy jurisprudence and stated that *Jacobson* precludes this case from proceeding past the pleading stage.

The District Court erred. It was considering a motion for judgment on the pleadings, the equivalent of a motion to dismiss. The District Court was compelled to accept everything Appellants alleged as true and draw all reasonable inferences in their favor. It then had to ask whether there was any possibility, however remote, that Appellants would prevail. The answer here was yes.

This does not mean that the Court must decline to follow *Jacobson*. As Justice Neil Gorsuch has noted, that decision's holding has been stretched much too far during the Covid pandemic. Instead, the Court should put *Jacobson* into its proper historical and procedural context. After all, that case came to the Supreme Court after a jury trial. Appellants deserve the same chance to gather evidence and

4

to present that evidence to the finder of fact. The judgment should be reversed, and the case remanded to provide them with that chance.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered its order granting judgment on the pleadings for Respondents on September 2, 2022, and it entered final judgment on November 9, 2022. Excerpts of Record ("ER") ER-89, ER-102. Appellants filed their notice of appeal on October 3, 2022. ER-103. It was timely filed. Fed. R. App. P. 4(a)(2).

## STATUTORY AND CONSTITUTIONAL PROVISIONS

The Fifth Amendment, as incorporated against the states by the Fourteenth Amendment provides, in relevant part: "No person shall … be deprived of life, liberty, or property, without due process of law …."

The Fourteenth Amendment provides, in relevant part: "No State shall … deny to any person within its jurisdiction the equal protection of the laws."

## ISSUE PRESENTED

Whether, accepting its factual allegations as true and liberally construing the facts in Appellants' favor, the SAC states a plausible claim that LAUSD's Covid vaccine policy violates its teachers' constitutional right to privacy and denies them equal protection of the law.

## STATEMENT OF THE CASE

This case challenges LAUSD's adoption of a policy that required its employees to get the Covid-19 vaccine to keep their jobs. LAUSD issued the initial vaccine policy March 4, 2021. ER-003. That prompted Appellants to file a lawsuit challenging the policy (the "First LAUSD Case"). *Id.*

Under pressure from that lawsuit, LAUSD diluted—indeed, it effectively rescinded—the vaccine policy by giving employees who did not want to get the shot the option of regular testing. ER-003-004. LAUSD then convinced the District Court to dismiss the First LAUSD Case based on the ripeness doctrine. *Id.*

Seventeen days later, LAUSD adopted a new policy that required all employees to get the Covid-19 shot to keep their jobs. ER-004. The new policy eliminated testing as an accommodation for those who did not wish to take the Covid shot (in fact, the policy required that even the vaccinated employees undergo regular Covid testing) and it implied that most requests for religious and medical accommodations would be denied. ER-041. That turned out to be true, as several of the Individual Appellants sought an accommodation to the vaccine mandate for religious and medical reasons but were told that the district would not accommodate them, period. ER-021-022.

In response, Appellants filed this case. The case was filed on November 3, 2021. ECF 1. The SAC was filed on March 14, 2022. It alleged several claims

under California state law. ER-023-033. Those claims were eventually dismissed without prejudice at Appellants' request. ER-096. The SAC also sought declaratory and injunctive relief under the Americans with Disabilities Act ("ADA") and other laws, but those claims were dismissed too. ER-100.

The only claims at issue in this appeal are the first and second causes of action. The first alleged that LAUSD's new Covid vaccine policy violated its employees' fundamental right to privacy under the substantive component of the Due Process Clause. ER-023-025. The SAC identified the relevant right as the right to bodily autonomy related to medical treatments and it invoked the Supreme Court's robust bodily integrity case law to support Appellants' claim. *Id.* The SAC also alleged that the Covid-19 shots are not "vaccines" as that term has historically been defined because they do not prevent people from becoming infected with the virus that causes Covid-19. The most the shots can do is reduce the severity of an infected person's symptoms (although even that is debated). Thus, the shots are medical treatments like medication and other therapeutics that people take when they are, or may become, sick. ER-014-018, ER-023-025.

The SAC also identified several flaws with the Covid-19 shots. For example, it cited evidence that people would have to get an endless supply of boosters to maintain the shot's efficacy, leading to a "regular cycle of vaccination and revaccination." ER-020 (quotations omitted). It also cited evidence that people

7

who took the Covid shots became sicker than people who did not take them. ER-017-021. And it discussed the significant, and growing, evidence of adverse reactions that people have reported in connection with the shots. ER-020-021. The individual plaintiffs cited these reasons, among others, for not wanting to take the Covid-19 shots. ER-021-022.

The first cause of action alleged that, given the interests implicated, strict scrutiny applies, and it explained why LAUSD's policy fails it. ER-023-025. The second cause of action alleged that the policy arbitrarily classifies people based on vaccination status, thus violating the Equal Protection Clause of the Fourteenth Amendment. ER-026-027.

LAUSD answered the first amended complaint on December 8, 2021. ECF 21. It answered the second amended complaint on April 7, 2022. ER-051. It raised numerous factual defenses, including that LAUSD "acted reasonably and in good faith at all times material herein based on all relevant facts and circumstances known at the time and that all employment actions taken with regard to Plaintiffs were taken for legitimate, non-discriminatory business reasons." ER-081. In between, the parties agreed to a case management and discovery schedule that would have allowed trial to take place in March 2023. ECF 52. But, in late July 2022, Respondents changed their strategy and filed a motion for judgment on the pleadings. ECF 74. They stopped cooperating in discovery after that.

On September 2, 2022, the District Court entered its order granting judgment on the pleadings for Respondents. ER-089. As to the substantive due process claim, the court rejected Appellants' request to apply heightened scrutiny to comport with the Supreme Court's opinions in *Cruzan* and other bodily integrity cases. ER-096-098. Instead, it applied rational basis review and determined that LAUSD's policy survived it because the policy "further[ed] its purpose of protecting LAUSD students and employees from COVID-19 …." ER-099. It applied the same analysis to the Equal Protection Claim. ER-099-100. This appeal followed.

## SUMMARY OF THE ARGUMENT

This case was once set for trial. LAUSD answered the SAC and said it would participate in discovery. But Appellants never got that chance. The district wanted to win the case without litigating. It did not want its documents revealed or its officials deposed. That is why it sought judgment on the pleadings. The District Court erred in granting that motion. *Jacobson* does not preclude this case from proceeding through discovery. It does not preclude a trial on the merits. To the contrary, this Court—in an opinion by the late Judge Stephen Reinhardt—has described *Jacobson* as a "balancing" case; that is, a case in which a court balances the individual's right to privacy (here, the interest in bodily autonomy) against the government's purpose in mandating a vaccine. That balancing analysis cannot be

9

done without the gathering and presentation of evidence. The judgment should be reversed, and the case should be remanded so that process can continue.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "functionally identical" to motions to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). This Court reviews the granting of such a motion *de novo*. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004).

At the pleading stage, a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [defendant] is entitled to judgment as a matter of law." *Compton Unified School Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010) (Smith, J. dissenting) (citation omitted).

This is a difficult standard for a defendant to meet. "A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief …" *Edwards*, 356 F.3d at 1061 (quotations omitted). "If there are two alternative

10

explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (noting that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" (quotations omitted)).

## ARGUMENT

The Court should reverse the judgment on the pleadings because, accepting its allegations as true and liberally construing them in Appellants' favor, the SAC states a plausible claim to relief under the Due Process and Equal Protection Clauses of the Constitution, as defined by the Supreme Court's bodily integrity jurisprudence.

### A. The Complaint Alleged that the Covid-19 Shots Are Medical Treatments and that LAUSD Did Not Have a Legitimate Public Health Reason to Require that Its Staff Take Them.

"The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It "protects those

fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720-21 (quotation omitted).

"To state a substantive due process claim, a plaintiff must allege (1) a valid liberty or property interest, (2) which the government infringed in an arbitrary or irrational manner." *Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1265 (D. Idaho 2022). Identifying the right that was violated is critical in a substantive due process case. "Certain rights or liberties have been deemed 'fundamental,' so they receive greater protection." *Id.* at 1265-66. This case involves the right to bodily autonomy, an aspect of the constitutional right to privacy. Numerous cases have recognized the right to bodily autonomy as a fundamental right protected by the substantive component of the Due Process Clause. *See id.* (citing *Glucksberg*, 521 U.S. at 725 and *Cruzan,* 497 U.S. at 278, among other cases); *see also Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014) (recognizing this right but finding that it did not apply because individual health care mandate only implicated plaintiffs' economic interests).

This should be dispositive. Whatever the precise standard (an issue discussed in more depth below), something greater than rational basis review applies when government action burdens a fundamental right, including the right to

reject unwanted medical treatment. *See Roe v. Wade*, 410 U.S. 179, 213 (1973) (Douglas, J., concurring); *see also Compassion in Dying v. State of Wash.*, 79 F.3d 790, 799 (9th Cir. 1996) (en banc), as amended (May 28, 1996) (reversed on other grounds in *Glucksberg*) (noting that "in cases like the one before us, the courts must apply a balancing test under which we weigh the individual's liberty interests against the relevant state interests in order to determine whether the state's actions are constitutionally permissible").

The District Court ignored that principle by citing *Jacobson* and by saying that, under *Jacobson*, "mandatory vaccination laws are generally constitutional" and that "*Jacobson* does not require that a vaccine have the specific purpose of preventing disease." ER-097-098. According to the District Court, *Jacobson* states that rational basis review applies and under rational basis review no case can plausibly challenge a mandatory vaccination policy, period. ER-097-099.

That misreads *Jacobson* and ignores the development of constitutional law during the past 115 years. Substantive due process is not a novel concept, but the Supreme Court began discussing it more explicitly only in the second half of the twentieth century. The second Justice Harlan explained this in 1960, stating that constitutional "'liberty' is not a series of isolated points" but "a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, and which also recognizes, what a

13

reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." *Poe v. Ullman*, 367 U.S. 497, 543 (1961) (Harlan, J., dissenting).

A majority of the Supreme Court adopted Justice Harlan's position four years later in *Griswold v. Connecticut*, 381 U.S. 479 (1965). *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 849 (1992) (recognizing this). Justice Byron White concurred in *Griswold* but wrote separately to explain why. In doing so, he rejected the dissent's argument that "the Court is without authority to ascertain whether a challenged statute, or its application, has a permissible purpose and whether the manner of regulation bears a rational or justifying relationship to this purpose. A long line of cases makes very clear that this has not been the view of this Court." *Griswold*, 381 U.S. at 504 n.* (White, J., concurring). One of the cases Justice White cited for that proposition was *Jacobson*.

Eight years later, in finding a constitutional right to an abortion, Justice Douglas explained that privacy "rights, though fundamental, are likewise subject to regulation on a showing of compelling state interest." *Roe*, 410 U.S. at 213. *Jacobson* was one of the cases he cited, and he distinguished it from *Roe* by noting the compelling state interest in *Jacobson*, which Justice Douglas defined as: "Vaccinations to prevent epidemics …." *Id.* at 215.

14

This trend continued during the latter part of the twentieth century. In fact, by 1990, a majority of the Supreme Court cited *Jacobson* as a case in which "the Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease." *Cruzan*, 497 U.S. at 278; *see also O'Connor v. Donaldson*, 422 U.S. 563, 582-83 (1975) (Burger, C.J., concurring) (citing *Jacobson* when explaining that "a State may confine individuals solely to protect society from the dangers of significant antisocial acts or communicable disease").

Justice Gorsuch had this history in mind when, during the fall of 2020, he criticized courts for misreading *Jacobson* during the Covid-19 pandemic. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70-71 (2020) (Gorsuch, J., concurring). But he could have thanked his conservative colleagues for that, as it was the conservatives who pushed for this interpretation of *Jacobson* during the late twentieth century, often in response to progressive justices who were trying to expand the scope of constitutional privacy rights.

Thus, for example, in *Kelley v. Johnson*, 425 U.S. 238 (1976), the Court, in an opinion by Justice Rehnquist, reversed a verdict for a policeman who challenged his employer's hair grooming policy under the Civil Rights Act of 1871. The Court held that the complaint should have been dismissed. *Id.* at 247-49.

It relied partially on *Jacobson* and the conservatives' view that, when it comes to promoting public health and safety, courts should not get involved. *Id.*

Similarly, dissenting in *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 808-09 (1986), Justices White and Rehnquist relied on *Jacobson* to attack the majority's pro-abortion ruling. They viewed *Jacobson* as permitting a mandatory health practice even if it "carried with it a statistical possibility of serious illness and even death." And in *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007), a conservative majority upheld the federal ban on "partial-birth" abortion by relying on the "wide discretion" the Court had given the political branches "in areas where there is medical and scientific uncertainty." Again, they relied on *Jacobson*.

A similar history can be found in the federal circuit courts. Before the Covid-19 pandemic, *Jacobson* was cited just 89 times in the circuit courts—less than once per year. In most of those cases it appeared simply as part of a string cite or for a basic proposition of law. *See, e.g., San Francisco Shopping News Co. v. City of S. San Francisco*, 69 F.2d 879, 889 (9th Cir. 1934) (citing *Jacobson* for traditional judicial deference to legislative decisions). In fact, between 1952 and 1996, this Court did not cite *Jacobson* at all. It resurrected the case in 1996, in its opinion in the *Glucksberg* right-to-die case, but did so to justify the use of a higher standard than rational basis review, saying: "The Court has been applying a

16

balancing test in substantive due process cases at least since 1905, when in

*Jacobson v. Massachusetts* … 'the Court balanced an individual's liberty interest

in declining an unwanted smallpox vaccine against the State's interest in

preventing disease.'" *Compassion in Dying*, 79 F.3d at 799 (quoting *Cruzan*, 497

U.S. at 278); *see also id.* at 804 (noting "the Court's ninety-year-old practice of

using a balancing test in liberty interest cases that raise important issues of the type

before us" instead of rational basis review). This was not the only court to reach

that conclusion. The Sixth Circuit has also relied on *Jacobson* in finding that a

competent adult has a constitutional right to refuse unwanted medical treatment.

*Guertin v. State*, 912 F.3d 907, 920 (6th Cir. 2019).

It was not until recently that modern courts relied on *Jacobson* to uphold

compulsory health policies. Even then, courts often took pains to emphasize the

narrowness of their rulings. For example, Second Circuit Judge James Oakes

invoked *Jacobson* when considering a lawsuit brought by a kindergarten teacher

accused of being incompetent. He explained: "Although compulsory vaccinations,

*Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905),

compelled blood tests, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16

L.Ed.2d 908 (1966), and rectal cavity searches, *Rivas v. United States*, 368 F.2d

703 (9th Cir.1966), cert. denied, 670 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875

(1967), have from time to time been upheld where there is clear necessity,

17

procedural regularity, and little or no physical risk, ... 'in each case ... [the] government's burden was to provide more than minimal justification for its action." *Gargiul v. Tompkins*, 704 F.2d 661, 669-70 (2d Cir. 1983) (Oakes, J., concurring), cert. granted, judgment vacated, 465 U.S. 1016 (1984) (quoting L. Tribe, *American Constitutional Law* 914-15 (1978)).

Judge Oakes' comments echoed previous decisions in which the Second Circuit said that cases like *Jacobson* "involved a clear interest, either on the part of society as a whole or at least in relation to a third party, which would be substantially affected by permitting the individual to assert what he claimed to be his 'free exercise' rights." *Winters v. Miller*, 446 F.2d 65, 70 (2d Cir. 1971); *see also English v. Town of Huntington*, 448 F.2d 319, 323 (2d Cir. 1971) (describing *Jacobson* as a case where accused was alleged to be a "danger to others"). Similar reasoning can be found in some other circuits (although not this one). *See, e.g., Dunn v. White*, 880 F.2d 1188, 1195 (10th Cir. 1989) (discussing government's "goal of controlling the spread of venereal disease" as justifying intrusions on bodily autonomy in limited circumstances).

During the Obama Administration, a handful of cases that challenged mandatory vaccination rules for children reached the circuit courts. In each case, the courts—the Second, Fourth and Sixth Circuits—upheld the policies. But none of the decisions considered *Jacobson* in context or given the development of

18

constitutional law in the second half of the twentieth century. Most engaged in no analysis at all. For example, like the District Court below, *Workman v. Mingo County Board of Education*, 419 F. App'x 348, 353-54 (4th Cir. 2011), simply presumed that all mandatory vaccination policies withstand constitutional scrutiny under *Jacobson*. Meanwhile, the Second Circuit devoted just two paragraphs, and no analysis, to this issue in *Caviezel v. Great Neck Public Schools*, 500 F. App'x 16, 19 (2d Cir. 2012), and just one paragraph—and again no analysis—to it in *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015).

Thus, *Jacobson* does not bar this case. Both this Court and the Supreme Court have recognized that such a challenge may be brought under the substantive component of the Due Process Clause. The District Court erred in finding otherwise.

### B. The Balancing Test the Supreme Court Envisioned for this Substantive Due Process Claim Cannot Be Done on the Pleadings.

That begs the question: what standard of review applies in a substantive due process case that involves the right to bodily autonomy? The District Court applied rational basis scrutiny. It erred.

In the en banc opinion in *Compassion in Dying,* Judge Reinhardt discussed the concept of substantive due process in depth. He noted how the Supreme Court's analysis of such claims had changed over the years—for example moving to speak "more frequently of substantive due process interests than of fundamental

19

due process rights"—and he explained that "[t]he Court's evolving doctrinal approach to substantive due process claims is consistent with the basic truth enunciated by Justice Harlan and later endorsed by the Court in *Casey*: 'the full scope of the liberty guaranteed by the Due Process Clause is a rational continuum which, broadly speaking, includes a freedom from substantial arbitrary impositions and purposeless restraints …." *Id.* at 803 (quoting *Casey*, 505 U.S. at 848). That means that certain interests, the "fundamental" ones, "cannot be limited except to further a compelling and narrowly tailored state interest." *Id.* at 804.

But that does not end the inquiry. "Other important interests, such as the liberty interest in refusing unwanted medical treatment, are subject to a balancing test that is less restrictive, but nonetheless requires the state to overcome a substantial hurdle in justifying any significant impairment." *Id.*

This case falls on that end of the spectrum. So did *Jacobson*. In fact, Judge Reinhardt described *Jacobson* as falling within the Supreme Court's "ninety-year-old practice of using a balancing test in liberty interest cases that raise important issues of the type before us." *Id.* More importantly, Judge Reinhardt noted that the balancing test used in substantive due process cases is not the same as the rational basis test used in equal protection and other constitutional cases. "While one might legitimately argue either that the liberty interest at issue here rises to the level of a fundamental right or that is simply an important liberty interest that is subject to a

20

balancing test, one point is absolutely clear: there can be no legitimate argument that rational basis review is applicable ….” *Id.*

This Court has never disavowed that reasoning. Neither has the Supreme Court (although it reversed the judgment in *Glucksberg*). And courts in this circuit have continued to refer to *Jacobson* and similar cases as “balancing” cases. *See, e.g., Williams v. Santiago*, No. 116-CV-01065-MJSPC, 2016 WL 6494268, at *3-4 (E.D. Cal. Nov. 1, 2016).

At the pleading stage, that is critical. State action fails rational basis review under the Equal Protection Clause “only when it rests on grounds wholly irrelevant to the achievement of the State’s objective.” *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 996 (N.D. Cal. 2012) (cleaned up). This standard is so difficult to meet that courts “hardly ever strike[ ] down a policy as illegitimate under rational basis scrutiny” and have only done so when “the laws at issue lack any purpose other than a bare ... desire to harm a politically unpopular group.” *Trump v. Hawaii*, __ U.S. __, 138 S. Ct. 2392, 2420 (2018) (quotations omitted). The balancing test that the Supreme Court used in *Jacobson*, and which Judge Reinhardt described in *Compassion in Dying*, involves more searching review. It may not be strict scrutiny, but it is more than nothing. And it cannot be done on the pleadings. It requires the gathering and presentation of evidence at a merits hearing.

Mr. Jacobson got that chance.[1] Other plaintiffs have gotten that chance in medical treatment cases. There is no reason Appellants should not have received that chance too. After all, without giving the plaintiff a fair chance to gather and present evidence, a balancing test is meaningless.

The rational basis test that the District Court applied below does not provide Appellants with that right. It rests on the assumption that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993) (quotation omitted). It allows a judge "to hypothesize about potential motivations of the legislature, in order to find a legitimate government interest sufficient to justify the challenged provision." *Gill v. Off. of Pers. Mgmt.*, 699 F. Supp. 2d 374, 387 (D. Mass. 2010), aff'd sub nom. *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1 (1st Cir. 2012). It requires the plaintiff to "negative every conceivable basis which might support [the policy], whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320-21 (quotations omitted). That may be the appropriate test to apply in an

---

[1] For example, Justice Gorsuch has noted that, "[i]n *Jacobson*, individuals could accept the vaccine, pay the fine, or identify a basis for exemption. The imposition on Mr. Jacobson's claimed right to bodily integrity, thus, was avoidable and relatively modest." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 71. There was no opt-out available to the Individual Appellants here and several were told that they would not be accommodated even if they had legitimate religious or medical reasons for requesting an accommodation. ER-021-ER-022.

equal protection case that does not involve a suspect classification. *See United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir. 2021). Indeed, as explained below, the rational basis test *does* apply to Appellants' equal protection claim. But it is not the right test to apply in a substantive due process case involving government action that interferes with an individual's fundamental interest in bodily autonomy.

Applying the Equal Protection Clause's rational basis test to substantive due process claims involving bodily autonomy would set a dangerous precedent. Balancing tests almost always involve factual disputes. *See, e.g., Eng v. Cooley*, 552 F.3d 1062, 1071-72 (9th Cir. 2009) (discussing *Pickering* balancing test that applies in First Amendment cases brought by public employees). The rational basis test rarely allows for such litigation. That, of course, is one of the criticisms of the Supreme Court's decision in *Buck*:

> There is general agreement that Justice Holmes was incorrect in his presumptions of fact concerning Carrie Buck. His phrase "three generations of imbeciles" is based upon the supposition that Carrie's mother and Carrie's infant daughter were both imbeciles. Subsequent investigation has revealed, however, that neither the mother nor Carrie's child were, in fact, imbeciles. A sociologist who delved into the evidence concerning Carrie Buck's mother reported that she was only mildly mentally retarded which, under the terminology employed in the 1920's, would have qualified her, at worst, as a moron and not an imbecile. Moreover, it was reported that Carrie's baby, the supposed third generation imbecile, was not mentally retarded at all. The daughter was only one month old at the time she was cavalierly labeled mentally defective by a Red Cross nurse. The child died in 1932 of

23

measles, but by that time she had completed the second grade of school where she had demonstrated her mental normality and, indeed, was reported to be very bright.

Robert L. Burgdorf & Mary Pearce Burgdorf, *The Wicked Witch Is Almost Dead: Buck v. Bell and the Sterilization of Handicapped Persons*, 50 Temp. L.Q. 995, 1006-07 (1977); *see also* Robert J. Cynkar, *"Felt Necessities" v. Fundamental Values?* 81 Colum. L. Rev. 1418, 1457 (1981) (describing "conspicuous absence of the adversarial character on which our legal system relies to determine a certain legal 'truth'" in *Buck*).

Whatever the outcome, the litigation in a substantive due process case that involves a fundamental interest like bodily autonomy should provide the plaintiff with an opportunity to create a factual record and to present that record to a judge. That will prevent cases from being decided on erroneous factual assumptions and outdated science, as *Buck* was. And, in a post-*Roe* world, it will ensure that the right to bodily autonomy continues to be protected against arbitrary restrictions.

### C. The Complaint Also Adequately Alleged that LAUSD's Covid Vaccine Policy Violated the Equal Protection Clause.

The Second Amended Complaint also adequately alleged that LAUSD's Covid vaccine policy violates the Equal Protection Clause.

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable

state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Heller*, 509 U.S. at 321 (quotations omitted). And it "will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.*

That said, rational basis review is not "toothless." *Mathews v. De Castro*, 429 U.S. 181, 185 (1976) (quotation omitted). "Rational basis review requires that the legislation not be enacted for arbitrary or improper purposes." *Golinski*, 824 F. Supp. 2d at 996. "The law must bear a logical relationship to the purpose it purports to advance." *Id.* Thus, "'even in the ordinary equal protection case calling for the most deferential of standards, [courts] insist on knowing the relation between the classification adopted and the object to be attained." *Gill*, 699 F. Supp. 2d at 387 (quoting *Romer v. Evans*, 517 U.S. 620, 633 (1996)). And "the justification for the law may not rely on factual assumptions that exceed the bounds of rational speculation." *Golinski*, 824 F. Supp. 3d at 996.

These principles are especially important in a case like this one, which involves a politically unpopular group, the unvaccinated, that some leaders have blamed for prolonging the Covid-19 pandemic. *See, e.g.,* Remarks by President Biden on Fighting the COVID-19 Pandemic (Sept. 9, 2021), *available at*

https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ (referring to Covid as "pandemic of the unvaccinated" just after LAUSD issued its new vaccine policy). "When applying rational basis review to a classification that adversely affects an unpopular group, courts apply a more searching rational basis review. With these protections, courts may thereby 'ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law.'" *Gill,* 824 F. Supp. 2d at 996 (quoting *Romer*, 517 U.S. at 633) (cleaned up).

Combining these principles with the liberal standard of review that governs pleading motions required denying LAUSD's motion for judgment on the pleadings. The SAC alleged that LAUSD's Covid vaccine policy was arbitrary because it distinguished between vaccinated and unvaccinated employees and "[y]et the situations of these employees are indistinguishable because vaccinated and reporting LAUSD employees can become infected with COVID, become re-infected with COVID, and can transmit COVID to fellow employees, school visitors, and students." ER-026. In other words, LAUSD's policy does not accomplish its stated purpose. The SAC alleged that LAUSD knew that—it had to, given that public health officials had admitted as much by the time it issued the policy—but that it enacted the policy to target the politically unpopular group of

26

unvaccinated employees. ER-026-027. Accepting those allegations as true, as required in a pleading motion, that states a plausible claim to relief under the Equal Protection Clause.

In fact, this case is like the equal protection challenges brought in *Romer* and *Golinski*, both of which involved classifications based on sexuality, both of which failed rational basis review. As Justice Kennedy noted in *Romer*, "even in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained." *Romer*, 517 U.S. at 632. That mattered in *Romer* because a review of the law being challenged there, an amendment to the Colorado constitution related to discrimination against homosexuals, revealed that its scope was "so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class it affects; it lacks a rational relationship to legitimate state interests." *Id.* The Court concluded that the law violated the Equal Protection Clause because it "classifies homosexuals not to further a proper legislative end but to make them unequal to everyone else." *Id.* at 635. It could only determine that with the gathering and presentation of evidence: the case came to the Supreme Court after extensive proceedings in the Colorado trial courts and two trips to the Colorado Supreme Court. *Id.* at 625-26.

Similarly, in *Golinski*, the court rejected several justifications the government offered to support the federal Defense of Marriage Act ("DOMA"), which the plaintiff, a lesbian, challenged as applied to her. For example, the court rejected Congress' goal of promoting traditional notions of morality because it did not believe that denying people benefits that they were otherwise entitled to accomplished that; it simply punished them. 824 F. Supp. 2d at 996-97. It also found that "[t]radition, standing alone, does not provide a rational basis for the law." *Id.* at 999. That is significant because, like many others, LAUSD justified its Covid vaccine policy by citing *Jacobson* and saying that the Constitution has always allowed for compulsory vaccination. "Simply stating what has always been does not address the reasons for it." *Id.* at 998-99.

Again, Appellants recognize that this standard of review is deferential. They recognize the height of their burden. But they deserve a fair chance to meet it. Indeed, they were trying to gather that evidence below. LAUSD answered the Second Amended Complaint. ER-51. The parties had a discovery plan and a trial date. ECF-52. The case should have been decided, at the earliest, on summary judgment. The Court should reverse the judgment and remand the case to provide that opportunity for discovery and a reasoned decision on the merits.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's judgment and remand the case for further proceedings.

Date:  January 3, 2023

JW HOWARD/ATTORNEYS, LTD.


*/s/ John W. Howard*
John W. Howard
Scott J. Street

*Attorneys for Appellants Health Freedom Defense Fund et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s) 22-55908**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** */s/ John W. Howard*                **Date:** January 3, 2023

30

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 22-55908**

I am the attorney or self-represented party.

**This brief contains 6,708 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
　　[ ] it is a joint brief submitted by separately represented parties;
　　[ ] a party or parties are filing a single brief in response to multiple briefs; or
　　[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *_/s/ John W. Howard_*　　　　　　　**Date:** _January 3, 2023_

31