No. 22-55908

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

HEALTH FREEDOM DEEFNSE FUND, ET AL.,
*Plaintiffs and Appellants*,

v.

MEGAN REILLY, ET AL.,
*Defendants and Appellees*.

---

On Appeal from the United States District Court
for the Central District of California
District Court Case No. 2:21-cv-08688-DSF-PV
Honorable Dale S. Fischer, Judge Presiding

---

## APPELLEE'S ANSWERING BRIEF

---

Connie L. Michaels, SBN 128065
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067
Telephone:  310.553.0308 - Facsimile: 310.553.5583
Email: cmichaels@littler.com

Carrie A. Stringham, SBN 272731
LITTLER MEDELSON, P.C.
500 W. Broadway, Suite 900
San Diego, California 92101
Telephone: 619.515.1836 - Facsimile: 619.340.4283
Email:  cstringham@littler.com

Attorneys for Defendants and Appellees

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ..................................................................1

II.    STATEMENT OF JURISDICTION ...................................2

III.   COUNTER-STATEMENT OF THE ISSUES .....................3

IV.   COUNTER-STATEMENT OF THE CASE .........................3

     A.    Relevant Procedural History ................................3

     B.    Statement of Relevant Facts ...............................10

          1.    The Importance of Vaccinations To The COVID-19 Pandemic. ..................................10

          2.    LAUSD's Vaccination Policy. .................................11

          3.    The Policy Includes Religious and Medical Exemptions. .......12

     C.    The Ruling Presented for Review .......................13

V.     SUMMARY OF ARGUMENT ...........................................13

VI.    STANDARD OF REVIEW ..................................................16

VII.   ARGUMENT .......................................................................18

     A.    The District Court's Order Granting LAUSD's Motion for Judgment on the Pleadings Should be Affirmed. ...............................18

          1.    LAUSD's Policy Does Not Deprive Appellants of a Fundamental Constitutional Right. ...........................................20

          2.    The District Court Properly Granted the Motion for Judgment on the Pleadings as to the First Cause of Action for Violation of Substantive Due Process Because It Easily Survives Rational Basis Review ...............................28

    a. Judgment Can Be Granted on the Pleadings Because the Second Amended Complaint Does Not Implicate a Constitutionally Protected Right. ........34

    b. Judgment Can Be Granted on the Pleadings Because Appellees Are Not "Persons" Under Section 1983. ................................................................37

   3. The District Court Properly Granted Judgment on the Pleadings as to Appellants' Equal Protection Claim Because the Policy Easily Survives Rational Basis Review. ...................................................................40

    a. Vaccination-Based Distinctions Have Never Been Recognized Under the Equal Protection Clause and Easily Endure Rational Basis Review. .........................40

    b. Despite the District Court Granting Leave to Amend, Appellants Refused to Do So...........................45

 B. Eleventh Amendment Sovereign Immunity Applies Because Appellants Admit Their End Goal Is an Award of Monetary Damages. ...........................................................................46

VIII. CONCLUSION.............................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abeel v. Clark*,
  84 Cal. 226 (1890) ......................................................................36, 37

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*,
  509 F.3d 1020 (9th Cir. 2007) ...............................................................28

*Agostini v. Felton*,
  521 U.S. 203 (1997)................................................................................25

*Alabama v. Pugh*,
  438 U.S. 781 (1978)................................................................................47

*Ammend v. BioPort Inc.*,
  322 F.Supp.2d 848 (W.D. Mich. 2004) ................................................46

*Angelotti Chiropractic, Inc. v. Baker*,
  791 F.3d 1075 (9th Cir. 2015) ...............................................................42

*Arizona Students' Association v. Arizona Board of Regents*,
  824 F.3d 858 (9th Cir. 2016) .................................................................47

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................17, 18

*Baker v. McCollan*,
  443 U.S. 137 (1979)................................................................................34

*Belanger v. Madera Unified Sch. Dist.*,
  963 F.2d 248 (9th Cir. 1992) ...........................................................46, 47

*Biden v. Missouri*,
  142 S.Ct. 646 (2022)...............................................................................31

*Biden v. Missouri*,
  142 S.Ct. 647 (2022)...............................................................................20

*Big Tyme Invs., L.L.C. v. Edwards*,
  985 F.3d 456 (5th Cir. 2021) .................................................................26

*Brown v. Smith*,
24 Cal.App.5th 1135 (2018) .........................................................36, 43

*Bruesewitz v. Wyeth LLC*
562 U.S. 223 (2011)........................................................................29

*Bryant v. Tex. Dep't of Aging & Disability Servs.*,
781 F.3d 764 (5th Cir. 2015) ..............................................................46

*Bullis v. Security Pacific Bank*
21 Cal.3d 803 (1978) .......................................................................45

*Calvary Chapel Dayton Valley v. Sisolak*,
140 S.Ct. 2603 (2020).....................................................................26

*Campos v. Cook Cnty.*,
932 F.3d 972 (7th Cir. 2019) ............................................................24

*Chrysafis v. Marks*,
141 S.Ct. 2482 (2021)......................................................................26

*City of Cleburne v. Cleburne Living Center, Inc*,
473 U.S. 432 (1985).........................................................................41

*Classic Concepts, Inc. v. Linen Source, Inc.*,
716 F.3d 1282 (9th Cir. 2013) .............................................................6

*Cooley v. Superior Cour*t
29 Cal.4th 228 (2002) ......................................................................40

*Corrie v. Caterpillar, Inc.*,
503 F.3d 974 (9th Cir. 2007) ...............................................................7

*Dixon v. De Blasio*,
2021 WL 4750187 (E.D. N.Y. Oct. 12, 2021) ...................................31

*Dobbs v. Jackson Women's Health Org.*,
142 S.Ct. 2228 (2022).....................................................................23

*Does #1-#14 v, Austin*,
572 F.Supp.3d 1223 (N.D. Fla. 2021) ..........................................32, 44

*Durning v. First Boston Corp.*,
   815 F.2d 1265 (9th Cir. 1987) ..............................................................19

*Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*,
   880 F.3d 450 (9th Cir. 2018) ................................................................29

*F. C. C. v. Beach Communications., Inc.*
   508 U.S. 307 (1993)......................................................................*passim*

*Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pennsylvania*,
   877 F.3d 487 (3d Cir. 2017) ................................................................36

*FDA v. Am. Coll. Of Obstetricians & Gynecologists*,
   141 S.Ct. 10 (2020)..............................................................................26

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ...............................................................18

*Green v. Mansour*,
   474 U.S. 64 (1985)........................................................................49, 50

*Guilfoyle v. Beutner*,
   2021 WL 4594780 (C.D. Cal. Sept. 14, 2021) ....................................33

*Harris v. County of Orange*,
   682 F.3d 1126 (9th Cir. 2012) .......................................................17, 37

*Heller v. Doe*,
   509 U.S. 312 (1993)......................................................................29, 40

*Hoeck v. City of Portland*,
   57 F.3d 781,786 (9th Cir. 1995) ..........................................................44

*Hustvet v. Allina Health Sys.*,
   910 F.3d 399 (8th Cir. 2018) ...............................................................36

*Ill. Republican Party v. Pritzker*,
   973 F.3d 760 (7th Cir. 2020) cert. denied 141 S.Ct. 1754 (2021).......26

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905)........................................................................*passim*

*Johnson v. Brown*,
   567 F.Supp.3d 1230 (D. Oregon 2021) ........................................................31, 36

*Johnson v. Dept. of Justice*
   (2015) 60 Cal.4th 871 ...............................................................................27, 28, 31

*Kheriaty v. Regents of Univ. of Cal.*,
   2021 WL 4714664 (C.D. Cal. Sept. 29, 2021) .................................................33

*Kirchmann v. Lake Elsinore Unified School Dist.*,
   83 Cal.App.4th 1098 (2000) .........................................................................38, 46

*Klassen v. Trustees of Indiana Univ.*,
   7 F.4th 592 (7th Cir. 2021) ....................................................................*passim*

*Lance Camper Mfg. Corp. v. Republic Indem. Co. of America*
   (1966) 44 Cal.App.4th 194 ...............................................................................45

*Leader v. Health Industries of America, Inc.*
   (2001) 89 Cal.App.4th 603 ...............................................................................45

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .............................................................................19

*Lockary v. Kayfetz*,
   917 F.2d 1150 (9th Cir. 1990) ..........................................................................28

*Logan v. U.S. Bank Nat'l Ass'n*,
   722 F.3d 1163 (9th Cir. 2013) ....................................................................16, 50

*Love v. King*,
   784 F.2d 708 (5th Cir. 1986) ......................................................................35, 36

*Love v. State Dep't of Educ.*,
   29 Cal.App.5th 980 (2018) .........................................................................35, 36

*Lukaszczyk v. Cook Cnty.*,
   47 F.4th 587 (7th Cir. Aug. 29, 2022) ....................................................*passim*

*Monarch Bev. Co. v. Cook*,
   861 F.3d 678 (7th Cir. 2017) .............................................................................33

*Nordlinger v. Hahn*,
505 U.S. 1 (1992) .......................................................................................41, 42

*Palka v. Shelton*,
623 F.3d 447 (7th Cir. 2010) ...............................................................24

*Parke v. Raley*,
506 U.S. 20 (1992)................................................................................16

*Phillips v. City of New York*,
775 F.3d 538 (2d Cir. 2015) ................................................................36

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
505 U.S. 833 (1992)..............................................................................23

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) .............................................................18

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)..................................................................................16

*Regents of the University of California v. Doe*,
519 U.S. 425 (1997)..............................................................................46

*Robinson v. Att'y Gen.*,
957 F.3d 1171 (11th Cir. 2020) ...........................................................26

*Rodriguez de Quijas v. Shearson American Express, Inc.*,
490 U.S. 477 (1989)..............................................................................25

*Roe v. Wade*,
410 U.S. 113 (1973)..............................................................................23

*Roman Catholic Diocese v. Cuomo*,
141 S.Ct. 63 (2020) (Gorsuch, J., concurring) ......................................25, 26, 32

*Roman v. Evans*,
517 U.S. 620 (1996)..............................................................................29

*RUI One Corp. v. City of Berkeley*,
371 F.3d 1137 (9th Cir. 2004) .............................................................42

viii

*S.Bay United Pentecostal Church v. Newsom,*
140 S.Ct. 1613 (2020) .................................................................26, 33

*Seminole Tribe of Florida v. Florida,*
517 U.S. 44 (1996) ........................................................................46

*Sharifi Takieh v. Banner Health,*
515 F.Supp.3d 1026 (D. Ariz. 2021) .............................................19

*Skelly v. State Personnel Board*
15 Cal.3d 194 (1975) .......................................................................4

*Smiley v. Citibank*
11 Cal.4th 138 (1995) ....................................................................45

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) .........................................................19

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,*
919 F.3d 1003 (7th Cir. 2019) .......................................................30

*Stanley v. Trustees of Cal. State Univ.,*
433 F.3d 1129 (9th Cir. 2006) .......................................................18

*Stormans, Inc. v. Wiesman,*
794 F.3d 1064 (9th Cir. 2015) ..................................................16, 24

*Sylvia Landfield Trust v. City of Los Angeles,*
729 F.3d 1189 (9th Cir. 2013) .......................................................29

*Torbet v. United Airlines, Inc.,*
298 F.3d 1087 (9th Cir. 2002) .......................................................17

*Tri-Valley Cares v. United States Dept. of Energy,*
671 F.3d 1113 (9th Cir. 2012) .........................................................6

*Trump v. Hawaii,*
133 S.Ct. 2392 (2018) ...................................................................30

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001) ..........................................................................6

ix

*United States v. Aukai,*
 497 F.3d 955 (9th Cir. 2007) ...............................................................17

*United States v. Navarro,*
 800 F.3d 1104 (9th Cir. 2015) .............................................................32

*United States v. Padilla-Diaz,*
 862 F.3d 856 (9th Cir. 2017) ...............................................................42

*Vergara v. State of California*
 246 Cal.App.4th 619 (2016) ................................................................40

*Vill. of Euclid, Ohio v. Amber Realty Co.,*
 272 U.S. 365 (1926).............................................................................44

*Washington v. Glucksberg,*
 521 U.S. 702 (1997)......................................................................23, 29

*We The Patriots USA, Inc. v. Hochul,*
 17 F.4th 266 (2d Cir. 2021) opinion clarified 17 F.4th 368 (2d Cir.
 2021) ...................................................................................................26

*Wells v. Brown,*
 891 F.2d 591 (6th Cir. 1999) ...............................................................47

*West v. Atkins,*
 487 U.S. 42 (1988)...............................................................................34

*Whitlow v. California,*
 203 F.Supp.3d 1079 (S.D. Cal. 2016)............................................37, 43

*Williams v. Pryor,*
 240 F.3d 944 (11th Cir. 2001) .............................................................44

*Witt v. Mich. Dep't of State Police,*
 491 U.S. 58 (1989)......................................................... 38, 39, 46, 47

*Workman v. Mingo Cty. Sch.,*
 667 F. Supp. 2d 679 (S.D. W.Va. 2009)..............................................37

*Wright v. Incline Village Gen. Improvement Dist.,*
 665 F.3d 1128 (9th Cir. 2011) .............................................................42

*Ex Parte Young*,
    209 U.S (1908)........................................................................47, 50

*Youngberg v. Romeo*,
    457 U.S. 307 (1982)....................................................................35

*Zucht v. King*,
    260 U.S. 174 (1922)..............................................................35, 36

**Statutes**

28 U.S.C. § 1291 ..............................................................................2

28 U.S.C. § 1331 ..............................................................................2

42 U.S.C. § 1983 .....................................................................*passim*

42 U.S.C. § 12101 ............................................................................4

Americans with Disabilities Act ....................................................4,8

Education Code Sec. 44807 ...........................................................44

**Other Authorities**

First Amendment...............................................................................2

Eleventh Amendment..............................................46, 47, 49, 50

Fourteenth Amendment .............................................................*passim*

Bill of Rights...................................................................................35

Cal. Const. art. I, Sec 28(c)(1) .....................................................44

Fed. R. Civ. P., Rule 12(c) ...........................................................18

Fed. R. Evid. 201(b).......................................................................19

Fed. R. Civ. Rule 12(b)(6) ...........................................................18

Fed. R. Civ. Rule 60(b)...................................................................6

## I.    INTRODUCTION

This appeal arises out of Los Angeles Unified School District's ("LAUSD") enforcement of its policy requiring all school district employees to be vaccinated against COVID-19 absent an exemption for medical or religious reasons. The salient facts are not in dispute: the Plaintiffs in this lawsuit did not want to be vaccinated and requested to be exempted from vaccination. In their Second Amended Complaint ("SAC") and Opening Brief, Plaintiffs allege various state and federal constitutional violations, largely intertwined with extraneous and questionable anti-vaccination political rhetoric, that they conclude establishes a cognizable legal claim against Defendants.

While mandatory vaccination policies of various kinds have been in place nationwide for years, it is an understatement to say that the COVID-19 pandemic has heightened public awareness of those policies and underscored their importance. California statutes and case law impose an affirmative and special duty of care on school officials, vis-à-vis student and employee health and safety, and charge school districts with a myriad of requirements and policies for the protection of student and employee safety. As the District Court correctly found, Plaintiffs' anti-vaccination theories, do not preclude a school district from enforcing safety policies that are rationally related to the legitimate purpose of protecting vulnerable students and staff against infectious diseases.  Each of the causes of action in Plaintiffs' SAC fail to

1

state a claim on which relief may be granted. Courts have consistently rejected challenges to mandatory vaccination laws predicated on the First Amendment, the Equal Protection Clause, the Due Process Clause, education rights, and privacy rights, such as appellants assert in their SAC. Accordingly, the trial court's granting of Defendants' motion for judgment on the pleadings should be affirmed on appeal. Additionally, because the SAC is Appellants' third attempt to assert claims that are demonstrably contrary to settled law, the lower court's order dismissing Appellants' case without leave to amend was within its sound discretion and should be affirmed, especially given that Appellants were afforded an opportunity to amend as to their only remaining cause of action and refused to do so.

## II.    STATEMENT OF JURISDICTION

Defendants and Appellees Alberto Carvalho, in his official capacity as Superintendent of the Los Angeles Unified School District ("LAUSD"); Ileana Davalos, in her official capacity as Chief Human Resources Officer for the LAUSD; and George McKenna, Monica Garcia, Scott Schmerelson, Nick Melvoin, Jackie Goldberg, Kelly Gonez, and Tanya Ortiz Franklin, in their official capacities as members of the LAUSD governing board (collectively "Appellees") do not contest that the federal district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and this Ninth Circuit Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 as the District Court's grant of Appellees' motion for judgment on

2

the pleadings resulted in a final judgment.

## III.   COUNTER-STATEMENT OF THE ISSUES

Whether the District Court properly granted Appellees' motion for judgment on the pleadings as to each claim alleged in the Second Amended Complaint because the LAUSD's COVID vaccine policy cannot form the basis of any plausible constitutional violation as a matter of law?

## IV.   COUNTER-STATEMENT OF THE CASE

### A.   Relevant Procedural History

On November 3, 2021, Plaintiffs and Appellants Health Freedom Defense Fund, Inc., a Wyoming Not-for-Profit Corporation; Miguel Sotelo, Mariel Howsepian-Rodriguez, Jeffrey Fuentes, Sandra Garcia, Hovhannes Saponghian, and Norma Brambila (collectively "Appellants") filed a Complaint for Violation of Civil Rights and Declaratory and Injunctive Relief against the LAUSD, Megan K. Reilly, in her official capacity as Interim Superintendent of the LAUSD; Ileana Davalos, in her official capacity as Chief Human Resources Officer for the LAUSD; and George McKenna, Monica Garcia, Scott Schmerelson, Nick Melvoin, Jackie Goldberg, Kelly Gonez, and Tanya Ortiz Franklin, in their official capacities as members of the LAUSD governing board. (Excerpts of Record, Vol. 1, 124-136, Docket No. 1 ("1-EOR-124-136" No. 1.) On November 17, 2021, Appellants filed a First Amended Complaint, which Respondents answered on December 8, 2021. (1-EOR-136, No. 8; 137 No. 21.)

3

On March 14, 2022, Appellants filed the operative Second Amended Complaint for Violation of Civil Rights and Declaratory and Injunctive Relief pursuant to a joint stipulation and order of the District Court. (1-EOR-143, Nos. 63-65.) When Appellants did so, California Educators for Medical Freedom, an unincorporated association, was added as an additional plaintiff while Mariel Howsepian-Rodrigeuz was removed. (1-EOR-002-003, 126.) At the same time, the LAUSD and Megan K. Reilly, in her official capacity as Interim Superintendent of the LAUSD, were dismissed from the action and Alberto Carvalho, in his official capacity as Superintendent of the LAUSD, was added as an additional defendant. (1-EOR-002-003, 131-132.)

Through the Second Amended Complaint, Appellants assert the following claims against Appellees: (1) Violation of the Fourteenth Amendment Substantive Due Process – 42 U.S.C. § 1983; (2) Violation of Fourteenth Amendment Equal Protection – 42 U.S.C. § 1983; (3) Declaratory and Injunctive Relief under California Constitution; (4) Declaratory and Injunctive Relief under Americans with Disabilities Act – 42 U.S.C. § 12101, et seq. – Disparate Treatment and Failure to Accommodate; (5) Violation of Due Process – *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194; (6) Public Disclosure of Private Facts; and (7) Breach of Security for Computerized Personal Information. (1-EOR-002-033-035.) On April 7, 2022, Appellees filed their Answer to Appellants' Second Amended Complaint.

(1-EOR-051-088.)

On July 29, 2022, Appellees filed a Notice of Motion and Motion for Judgment on the Pleadings (1-EOR-145 No. 74), which was supported by a memorandum of points and authorities (1-EOR-145 No. 74-1), the Declaration of Carrie A. Stringham (Supplemental Excerpts of Record, Vol. 1, 39-42 ("1-SER-39-42") and a proposed order (1-EOR-145 No. 74-3). On August 22, 2022, Appellants filed their opposition to the motion for judgment on the pleadings, which was supported by 31 exhibits. (1-EOR-146 No. 79.) On August 29, 2022, Appellees filed their reply in support of the motion for judgment on the pleadings (1-EOR-146 No. 80), which was supported by a request for judicial notice (1-SER-4-18), objections to the evidence submitted by Appellants in opposition (1-SER-20-37), and a proposed order (1-EOR-146 No. 80-3.) On September 1, 2022, Appellants then filed a document entitled Response to Defendants' Request for Judicial Notice and Defendants' Objections to Plaintiffs Evidence Submitted in Opposition to Defendants' Motion for Judgment on the Pleadings. (1-EOR-146 No. 81.)

The next day, on September 2, 2022, the District Court entered its Order Granting Defendants' Motion for Judgment on the Pleadings, which included a detailed and well-reasoned 13-page decision. (1-EOR-089-101.) In so doing, the District Court sustained Appellees' objections to each of the 31 exhibits proffered by Appellants in opposition to the motion as follows:

Defendants object to each of the 31 exhibits attached to Plaintiff's Opposition. Dkt. 08-2 at 3. Among other objections, Defendants point out that Plaintiffs' reference to those exhibits is improper on a motion for judgment on the pleadings. Id. The Court agrees with Defendants. 'Judgment on the pleadings is limited to material included in the pleadings. Otherwise, the proceeding is converted to summary judgment.' Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health, 654 F.3d 919, 925 n. 6 (9th Cir. 2011) (finding district court did not abuse discretion in declining to convert motion for judgment on the pleadings into one for summary judgment). The Court declines to convert this motion into one for summary judgment by considering the exhibits to Plaintiffs' Opposition.

(1-EOR-091-092, emphasis in original.)

Through the instant appeal, Appellants do *not* appeal the correct order of the District Court sustaining Appellees' objections to the 31 exhibits and declining to convert the motion for judgment on the pleadings into a motion for summary judgment. (*See absence from* Appellants' Opening Brief ("AOB").) As a result, this Ninth Circuit similarly cannot consider the 31 exhibits – which Appellants do not even include as part of the record - in reaching its decision on appeal. (*See absence from* EOR.)[1]

---

[1] Plaintiffs have waived any issue as to the district court's order sustaining the objections to the 31 exhibits on appeal. (*TRW Inc. v. Andrews*, 534 U.S. 19, 34 (2001) ["We do not reach this issue because it was not raised or briefed"]; *Classic Concepts, Inc. v. Linen Source, Inc*., 716 F.3d 1282, 1285 (9th Cir. 2013) ["Finally, Classic waived its appeal of the Rule 60(b) ruling because Classic did not address that ruling in its appellate briefing"]; *Tri-Valley Cares v. United States Dept. of Energy*, 671 F.3d 1113, 1129-1130 (9th Cir. 2012) ["Claims not made in an opening

The District Court also correctly granted Appellees' request for judicial notice of exhibits filed in support of the reply, including Exhibits A and B, which are statistics published by the World Health Organization ("WHO") and the County of Los Angeles Department of Public Health, respectively, showing the total number of reported COVID-19 cases as of August 2022 in the United States and Los Angeles County, and Exhibit C, which is an information sheet published by the Centers for Disease Control and Prevention ("CDC") relating to the safety and efficacy COVID-19 vaccines. (1-EOR-092; 1-SER-4-18.) Specifically, the District Court correctly determined that "Exhibits A-C are matters of public record because they are government publications. See Corrie v. Caterpillar, Inc., 503 F.3d 974, 978 n. 2 (9th Cir. 2007) (a court may take judicial notice of a government publication)." (1-EOR-093.) Like the District Court's order sustaining Appellees' objections, Appellants' Opening Brief is devoid of any argument challenging this correct order of the District Court. (*See absence from* AOB.)

Next, the District Court noted that "Plaintiffs agree to dismiss their state law claims without prejudice. Opp'n at 9. The Court therefore GRANTS Defendants' motion as to the state law claims without leave to amend." (1-EOR-096.) As a result, the third, fifth, sixth, and seventh causes of action were dismissed from the case and

brief in a sufficient manner to put the opposing party on notice are deemed waived"].

are not at issue through the instant appeal. (1-EOR-095-096.) Similarly, the District Court explained that "Plaintiffs state in their Opposition that they agree to dismiss their ADA claim without prejudice." (1-EOR-100.) Given this, the motion for judgment on the pleadings was granted as to the fourth cause of action brought under the ADA without prejudice, which is also not at issue through this appeal. (1-EOR-101.)

Thus, only Appellants' substantive due process and equal protection claims as set forth in the first and second causes of action, respectively, remained at issue before the District Court, and they are likewise the only claims at issue through Appellants' instant appeal. As to the substantive due process claim, after a reasoned discussion the District Court correctly granted the motion for judgment on the pleadings finding:

> Defendants argue that there is a rational basis for the Policy: 'a legitimate and constitutionally mandated state interest in promotion and providing the safest environment possible to all employees and students against the COVID-19 virus.' Mot. At 16 (citing Cal. Const. art. I, Sec 28(c)(1) and Education Code Sec. 44807). Plaintiffs argue that the vaccine does not further the Policy's stated purpose of 'provid[ing] the safest possible environment in which to learn and work,' Policy at 1; Opp'n at 19; they point out various uncertainties about the precise mechanics of the COVID-19 vaccine, including numerous authorities explaining that the COVID-19 vaccine is believed to reduce symptoms in infected vaccine recipients and prevent severe disease and death, rather than prevent transmission or contraction of COVID-19. Opp'n at 12-16. However, these features of the vaccine further the

> purpose of protecting LAUSD students and employees from COVID-19, and the Court finds the Policy survives rational basis review.

(1-EOR-098-099.)

The District Court likewise granted the motion for judgment on the pleadings as to Appellants' equal protection claim correctly reasoning as follows:

> Plaintiffs identify the two classes that the Policy treats disparately as unvaccinated persons and vaccinated persons. Opp'n at 22. Plaintiffs cite no authority indicating courts have found such classifications to be suspect. See id; see also Kheriaty v. Regents of Univ. of California, No. SACV 21-01367 JVS (KESx), 2021 WL 4714664 (C.D. Cal. Sept. 29, 2021) (finding university vaccine policy did not create a suspect or quasi-suspect class in treating individuals disparately who had vaccine-induced versus infection-induced immunity to COVID-19).
>
> Further, as discussed above, the Policy does not implicate any fundamental rights, and the Policy is rationally related to a legitimate state interest. Therefore the Court GRANTS Defendants' motion as to the equal protection claim with leave to amend.

(1-EOR-100.)

In granting Appellees' motion for judgment on the pleadings, the District Court did so *with leave to amend* as to the equal protection claim. (1-EOR-101.) In this regard, the District Court's order expressly provided that "[s]hould Plaintiffs choose to file an amended complaint, it must be filed and served no later than September 26, 2022." (1-EOR-146 No.82.) Appellants did not file and serve any amended complaint in compliance with the District Court's order. (*See absence from*

1-EOR-146-147.) Instead, on October 3, 2022, Appellants filed the instant Notice of Appeal. (1-EOR-103-123.) Thereafter, on November 9, 2022, the District Court entered judgment finding that "Plaintiffs take nothing, the action be dismissed with prejudice, and Defendants recover costs of suit pursuant to a bill of costs …" (1-EOR-102, 147 No. 89.)

### B. Statement of Relevant Facts

#### 1. The Importance of Vaccinations To The COVID-19 Pandemic.

Since the beginning of 2020, COVID-19 has been regarded as a highly transmissible disease that can cause serious illness and death. (1-SER-11-18.) According to the WHO, as of August 26, 2022, there were 596,873,121 confirmed cases of COVID-19 globally, including 6,459,684 deaths and 12,449,443,718 vaccine doses administered. (1-SER-11.) In the United States alone, as of August 2022, there were 92,739,935 confirmed cases of COVID-19 with 1,031,832 deaths, and 599,453,415 vaccine doses administered. (1-SER-11.) Specific to Los Angeles County, on just one day - August 26, 2022 – there were 3,694 new COVID-19 reported cases, and through August 25, 2022, there were 3,386,161 reported cases and over 33,000 reported deaths. (1-SER-13-14.)

The overwhelming consensus amongst the nation's leading health experts is that COVID-19 vaccines are safe and effective in preventing serious illness and death from this highly contagious virus. (1-SER-16-18.) As the CDC confirms,

"COVID-19 vaccines are **safe and effective**." (1-SER-16, emphasis in original.) According to the CDC, more than 607 million doses of the COVID-19 vaccine were given in the United States from December 14, 2020, through August 17, 2022. (1-SER-16.) "COVID-19 vaccines were evaluated in tens of thousands of participants in clinical trials. The vaccines met the Food and Drug Administration's (FDA's) rigorous scientific standards for safety, effectiveness, and manufacturing quality needed to support emergency use authorization (EUA)." (1-SER-16.) Importantly, the CDC advises that "[s]erious side effects that could cause a long-term health problem are extremely rare following any vaccination, including COVID-19 vaccination. The benefits of COVID-19 vaccination outweigh the known and potential risks." (1-SER-17.)

## 2. LAUSD's Vaccination Policy.

With both the advisement of the CDC as to the efficacy of vaccines and COVID-19's high transmissibility, which can cause serious illness and death, and considering the nationwide efforts to get students back in the classroom and teachers back to work, LAUSD determined employee vaccination requirements were necessary to meet its constitutionally mandated obligations to protect students and staff. (1-EOR-037-041.) As LAUSD explained to its employees "[a]s part of Los Angeles Unified School District's efforts to provide the safest possible environment in which to learn and work, **all** District employees will be required to be fully

11

vaccinated against COVID-19 …" (1-SER-037, emphasis in original.) In this regard, consistent with the recommendations of the CDC that all persons over the age of six months be vaccinated even if previously infected with the virus, and following consultation with experts in the field, the LAUSD mandated vaccinations for its employees with exemptions for health and religious reasons. (1-SER-037-041.)

Specifically, on August 13, 2021, LAUSD issued a mandatory COVID-19 vaccination policy (the "Policy") requiring all employees receive the first dose of the COVID-19 vaccine by October 15, 2021. (1-SER-037-041.) The Policy expressly explains that "'[f]ully-vaccinated' refers to an individual who has received the first and second doses of the vaccine (or, in the case of Johnson & Johnson, the single required dose) and has completed the two-week period that follows to ensure maximum immunity." (1-SER-038.) To provide time to obtain the vaccination, the Policy provides that "[s]upervisors shall allow employees to be vaccinated during their regularly scheduled workday. Up to three hours of worktime (per dose) are allotted, including travel to the vaccination location." (1-SER-039.)

### 3. The Policy Includes Religious and Medical Exemptions.

The Policy provides procedures for those seeking religious or medical exemptions. (1-SER-040.) Specifically, the Policy allows employees to apply to seek exemption from the COVID-19 vaccine requirements under the following circumstances: (1) "The employee submits a written statement from a licensed

physician identifying a need for accommodation due to the person's disability or serious medical condition ..."; and (2) "The employee seeks accommodation based on a sincerely held religious belief." (1-SER-040.) In this regard, the Policy includes a COVID Reasonable Accommodation Application, which was provided to all employees with the written announcement of the Policy. (1-SER-043.)

### C.    The Ruling Presented for Review

The ruling presented for review is the District Court's September 2, 2022 Order Granting Motion for Judgment on the Pleadings. (1-EOR-089-101.)

## V.    SUMMARY OF ARGUMENT

When Appellants' hyperbole and speculation as to LAUSD's intent in implementing the Policy in direct contravention to the record before this Court are stripped away, there can be no doubt that the District Court's order granting the motion for judgment on the pleadings should be affirmed. Facing an unprecedented and deadly COVID-19 pandemic, LAUSD worked diligently to protect the health and safety of its vulnerable community while continuing to pursue its mission of providing educational needs to its students. (1-SER-11-41.)  Against this backdrop, Appellants seek to have this Court approve the notion that an employer's vaccine mandate, issued during a global pandemic, violates either the liberty interests secured by the due process clause of the Fourteenth Amendment, or equal protection guarantees. The law, however, has historically recognized limits on an individual's

13

right to determine what to do with his or her own body when faced with society's interest in protecting public health and safety. At no time in modern history have such interests been more compelling than over the last three years during the worldwide COVID-19 pandemic.

Here, the District Court correctly determined that the Policy, which mandates LAUSD employees be fully vaccinated against COVID-19, "further[s] the purpose of protecting LAUSD students and employees from COVID-19" which "survives rational basis review" because it is rationally related to a strong governmental interest in protecting public health during a pandemic. (1-EOR-117.) Appellants purport that the District Court erred in granting the motion because "*Jacobson* does not preclude this case from proceeding through discovery. It does not preclude a trial on the merits." (AOB 9.) As a matter of law, Appellants are wrong.

The District Court correctly opined that this case is controlled by the U.S. Supreme Court's decision in *Jacobson v. Massachusetts,* 197 U.S. 11, 25-31 (1905) ("*Jacobson*"), which held that mandatory vaccination laws are generally constitutional. (*Id.*) The Seventh Circuit further confirmed this notion in *Klassen v. Trustees of Indiana Univ.,* 7 F.4th 592 (7th Cir. 2021) ("*Klassen*"), which held that Indiana University's COVID-19 vaccine mandate survived constitutional due process scrutiny and *Jacobson* is controlling law. (*Id.*) Indeed, this case is easier than that considered in *Jacobson* because, like Indiana University's policy which

14

provided for religious and medical exemptions and only applied as a condition of attending the university, LAUSD's Policy likewise provides for religious and medical exemptions and does not apply to all citizens, but only as a condition of employment. (*Id.* at 593.)

Further, as the District Court properly found, stopping the spread of COVID-19 amongst some of the most vulnerable segments of the population within LAUSD public schools is a legitimate government interest. (1-EOR-114-118.) The Policy is rationally related to LAUSD's strong governmental interest in protecting public health during a pandemic and helps to ensure that schools and classrooms are not shut down. (1-EOR-114-118.) Vaccinations lower the risk of outbreaks and serious illness, thereby allowing students to continue to receive in-person instruction while simultaneously protecting the health of vulnerable students and staff and those close to them. (1-EOR-37-41; 1-SER-11-41.)

Appellants concede that mandatory vaccination laws are generally constitutional under *Jacobson* and its progeny, but nevertheless incorrectly argue that the Policy should be strictly scrutinized. Appellants further argue a "balancing test" should be applied, because the underlying policy violates their fundamental right to refuse government coerced medical treatment and treats individuals differently based on vaccination status. (1-EOR-097.) As the District Court aptly noted, "Plaintiffs do not cite any cases adopting this approach with respect to the

COVID-19 vaccine or any other vaccine." (1-EOR-097.) Indeed, case law is to the contrary. The Seventh Circuit recently rejected an almost identical argument that COVID-19 vaccine mandates infringe fundamental liberty and bodily autonomy interests, and that the policies at issue should therefore be subject to strict scrutiny rather than rational review. (*Lukaszczyk v. Cook Cnty.,* 47 F.4th 587 (7th Cir. Aug. 29, 2022).) Instead, the Seventh Circuit followed U.S. Supreme Court guidance which holds that courts should be "hesitant to expand the scope of fundamental rights under substantive due process." (*Id.*) This Ninth Circuit has also been reluctant to add new fundamental rights under substantive due process. (*Stormans, Inc. v. Wiesman,* 794 F.3d 1064, 1087 (9th Cir. 2015).)

For these reasons, the District Court's September 2, 2022 Order Granting Motion for Judgment on the Pleadings and the resulting judgment were legally correct in all material respects and should be affirmed.

## VI. STANDARD OF REVIEW

As a general rule, the Ninth Circuit presumes district court decisions are correct. (*Parke v. Raley,* 506 U.S. 20, 29 (1992); *Purcell v. Gonzalez,* 549 U.S. 1, 5 (2006).) The appealing party bears the burden of demonstrating that the district court erred. (*Id.*) In reviewing district court decisions, the court of appeals may affirm on any ground that has support in the record, whether or not the district court decision relied on the same grounds or reasoning adopted by the appellate court. (*Logan v.*

*U.S. Bank Nat'l Ass'n,* 722 F.3d 1163, 1169 (9th Cir. 2013) [disagreeing with district court's reason for dismissal, but affirming dismissal because plaintiffs failed to plead proper claim].)

A district court's decision to grant a motion for judgment on the pleadings is reviewed de novo. (*Harris v. County of Orange,* 682 F.3d 1126, 1131 (9th Cir. 2012); *Torbet v. United Airlines, Inc.,* 298 F.3d 1087, 1089 (9th Cir. 2002) overruled on other grounds by *United States v. Aukai,* 497 F.3d 955, 960 (9th Cir. 2007).) Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. (*Id.*) It is not proper where the pleadings contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible" on its face. (*Id.*)

However, although the Court must accept well-pleaded facts as true, it is not required to accept *mere conclusory allegations or conclusions of law couched as fact*. (*Id.*, see also *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (emphasis added).) Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." (*Id.* at 558.)

## VII.   ARGUMENT

### A.   The District Court's Order Granting LAUSD's Motion for Judgment on the Pleadings Should be Affirmed.

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move to dismiss a claim "[a]fter the pleadings are closed … but early enough not to delay trial." (Fed. R. Civ. P., Rule 12(c).) As here, a motion for '[j]udgment on the pleadings is proper when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." (*Stanley v. Trustees of Cal. State Univ.,* 433 F.3d 1129, 1133 (9th Cir. 2006); *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009).)

Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) judgment on the pleadings is essentially the same as for a Rule 12(b)(6) motion. (*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,* 522 F.3d 1049, 1052 n. 1 (9th Cir. 2008).) To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal,* 556 U.S. at 678 quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).) A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." (*Id*. quoting Fed. R. Civ. P. 8(a)(2).)  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id*. citing *Twombly*, 550 U.S. at 555.) A claim may be dismissed if it fails to state a

18

cognizable legal theory or fails to provide sufficient facts to support a claim. (*Sharifi Takieh v. Banner Health*, 515 F.Supp.3d 1026, 1034 (D. Ariz. 2021).)

While a court's review of a motion for judgment on the pleadings is generally limited to the contents of the complaint, the court may also consider documents attached to the complaint or matters of judicial notice. (*Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Evid. 201(b).) The Court "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint. (*Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).) Here, there is no dispute that the District Court properly took judicial notice of governmental publications regarding the high transmissibility and potential deathly consequences of the COVID-19 pandemic and the importance of vaccines. (1-SER-011-018.)

When considering both the face of the Second Amended Complaint and the exhibits attached to it along with the judicially noticeable governmental publications detailing the severe worldwide impact of the COVID-19 pandemic and the importance of vaccines, the District Court properly granted the motion for judgment on the pleadings which should be affirmed on appeal.

19

### 1. LAUSD's Policy Does Not Deprive Appellants of a Fundamental Constitutional Right.

The foundation of Appellants' appeal is that LAUSD's Policy violates substantive due process by violating their fundamental right to bodily autonomy, including over medical decisions. Both the U.S. Supreme Court and other Circuit Courts have recognized the fallacy of this contention, holding that the Constitution embodies no fundamental right that would render unconstitutional vaccine requirements imposed in the public interest in response to a public health emergency. (*Jocobson,* 197 U.S. at 25-31; *Biden v. Missouri,* 142 S.Ct. 647, 653 (2022); *Klaassen,* 7 F.4th at 593.) As a result, the District Court correctly held that LAUSD's Policy "further[s] the purpose of protecting LAUSD students and employees from COVID-19" which "survives rational basis review" because it is rationally related to a strong governmental interest in protecting public health during a pandemic. (1-EOR-117.)

In *Jacobson,* the U.S. Supreme Court upheld a far more sweeping vaccine mandate than the one at issue here. There, the City of Cambridge enacted a regulation which required all residents of the city to be vaccinated or revaccinated against smallpox. (*Jacobson,* 197 U.S. 11.) The U.S. Supreme Court held the regulation did not violate any constitutional rights because the government had the authority to enforce the vaccine mandate for the "protection of the public health and the public safety." (*Id.* at 31, 39.) The U.S. Supreme Court "distinctly recognized

the authority of a state to enact quarantine laws and 'health laws of every description'" and declared "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." (*Id.* at 25, 29.) In so doing, the U.S. Supreme Court emphasized that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," (*Id.* at 27) and that judicial intervention would be appropriate only if the challenged mandate was "arbitrary" or "[had] no real or substantial relation to the protection of the public health." (*Id.* at 28, 31.)

Recent circuit decisions specific to COVID-19 supplement *Jacobson.* In *Klaassen,* eight students brought a lawsuit against Indiana University challenging the school's COVID-19 vaccine policy. (*Kaassen,* 7 F.4th at 592.) That policy required all students be vaccinated against COVID-19 unless they were exempt for religious or medical reasons. (*Id.*) The students sought a preliminary injunction, claiming the policy violated their due process rights under the Fourteenth Amendment. (*Id.*) Citing *Jacobson,* the Seventh Circuit applied the rational basis standard. (*Id.* at 593.) In so doing, the Seventh Circuit noted that the university's vaccine policy made for an easier case than *Jacobson* because the university's policy had religious and medical exceptions, and it required only university attendees to vaccinate, rather than all the citizens of a state. (*Id.*)

21

Similarly, in *Lukaszczyk v. Cook County,* the Seventh Circuit rejected the argument made by public employees and healthcare workers against cities and county challenging state and local mandates requiring them to be vaccinated against COVID-19 or be subject to disciplinary action and termination, claiming the policies violated their substantive due process. (*Lukaszczyk,* 47 F.4th 587.) In so doing, the Seventh Circuit held that courts should be reluctant to expand the concept of substantive due process. (*Id.* at 601-02.) Instead, just like in *Klaassen,* the Seventh Circuit rejected strict scrutiny and applied rational basis review to the vaccine mandate claims. (*Id.*)

Appellants concede that mandatory vaccination laws are generally constitutional under *Jacobson* and its progeny. (1-EOR-097.) Notably, Appellants' Opening Brief is devoid of any mention of either *Klassen* or *Lukaszczyk,* both of which apply a rational basis review in upholding various COVID-19 vaccine mandates. Despite this directly relevant case law, Appellants argue that LAUSD's Policy implicates a different, fundamental constitutional right: the right to refuse unwanted medical treatment. (1-EOR-097.) In support of this misplaced argument, Appellants do not cite any cases adopting this approach with respect to the COVID-19 vaccine or any other vaccine. Instead, Appellants attempt to weave together dicta in concurring or dissenting opinions included in factually distinguishable cases and rely on overruled case law to purport that the District Court "misreads *Jacobson* and

ignores the development of constitutional law …" (AOB 13, 11-19.)

Specifically, like the failed argument proffered in *Lukaszczyk*, the Appellants cite several factually distinguishable decisions to argue they have a fundamental liberty and bodily autonomy interest, which require strict scrutiny review. (AOB 11-19 citing *Cruzan v. Dir., Missouri Dep't of Health,* 497 U.S. 261, 278 (1990) [stating that a "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"]; *Washington v. Glucksberg,* 521 U.S. 702, 735 [holding that a state ban on assisted suicide did "not violate the Fourteenth Amendment, either on its face or as applied to competent, terminally ill adults who wish to hasten their deaths by obtaining medication prescribed by their doctors"].) Appellants also rely on *Roe v. Wade,* 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833 (1992), both of which have since been overruled by *Dobbs v. Jackson Women's Health Org.,* 142 S.Ct. 2228, 2242 (2022).

As the Seventh Circuit opined in *Lukaszczyk,* Appellants' argument is unavailing to support their flawed attempt to apply strict scrutiny in this case:

> Plaintiffs in each case have failed to provide facts sufficient to show that the challenged mandates abridge a fundamental right. Nor do they provide a textual or historical argument for their constitutional interpretation. Plaintiffs do not cite any controlling case law or other legal authority in support of their position, instead relying on decisions that are either factually distinguishable or that have been overruled. Neither this court nor the district

23

> judges deny that requiring the administration of an
> unwanted vaccine involves important privacy interests.
> But the record developed and presented here does not
> demonstrate that these interests qualify as a fundamental
> right under substantive due process.

(*Id.* at 602.)

Here too, Appellants do not cite any controlling case law or other legal authority in support of their position, instead relying on decisions that are either factually distinguishable or that have been overruled. Following the guidance of the U.S. Supreme Court, this Ninth Circuit has been reluctant to add new fundamental rights under substantive due process. (*Stormans, Inc.,* 794 F.3d at 1087 [courts "must be 'reluctant to expand the concept of substantive due process' and must 'exercise the utmost care whenever we are asked to break new ground in this field"].) The Seventh Circuit has likewise been hesitant to expand the scope of fundamental rights under substantive due process. (*Lukaszczyk,* 47 F.4th at 602; see also *Campos v. Cook Cnty.,* 932 F.3d 972, 975 [noting that employment-related rights are not fundamental]; *Palka v. Shelton,* 623 F.3d 447, 453 (7th Cir. 2010) [stating that "an alleged wrongful termination of public employment is not actionable as a violation of public employment is not actionable as a violation of substantiative due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate"].) This Court should not do so here since the U.S. Supreme Court's decision in *Jacobson* is controlling.

24

Appellants' contention that *Jacobson* should be put "into its proper historical and procedural context" and not followed in this case is unsupportable. (AOB 4.) *Jacobson* has not been overruled and this Court must follow directly applicable U.S. Supreme Court precedent. (*Agostini v. Felton,* 521 U.S. 203, 237 (1997) ["if a precedent of this Court has direct application in a case yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"].) Only the U.S. Supreme Court can overrule its own decisions; if the reasoning of a decision directly on point appears to have been undermined by subsequent precedent, the lower courts must apply that decision and leave it to the U.S. Supreme Court to overrule its cases. (*Rodriguez de Quijas v. Shearson American Express, Inc.,* 490 U.S. 477, 484 (1989).)

The Seventh Circuit squarely reaffirmed the continuing applicability of *Jaocobson* when it unanimously held in both *Klaassen* and *Lukaszczyk* that COVID-19 vaccination requirements are subject to a rational basis standard. (*Klaassen,* 7 F.4th at 593, *Lukaszczyk,* 47 F.4th at 602; see also *Roman Catholic Diocese v. Cuomo,* 141 S.Ct. 63, 70 (2020) (Gorsuch, J., concurring) ["Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review"].) *Jacobson* has also continued to be relied upon in other cases. For example, Chief Justice Roberts recently cited it favorably and numerous circuits have relied

25

on *Jacobson* when addressing issues similar to the ones before this Court. (*S.Bay United Pentecostal Church v. Newsom,* 140 S.Ct. 1613, 1613 (2020) (Roberts, C.J. concurring in denial of application for injunctive relief); *Chrysafis v. Marks,* 141 S.Ct. 2482 (2021); *Cuomo,* 141 S.Ct. at 70; *FDA v. Am. Coll. Of Obstetricians & Gynecologists,* 141 S.Ct. 10 (2020); *Calvary Chapel Dayton Valley v. Sisolak,* 140 S.Ct. 2603 (2020); *Ill. Republican Party v. Pritzker,* 973 F.3d 760 (7th Cir. 2020) cert. denied 141 S.Ct. 1754 (2021) ["The district court appropriately looked to *Jacobson* for guidance, and so do we."]; *We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 293-94 n. 35 (2d Cir. 2021) opinion clarified 17 F.4th 368 (2d Cir. 2021) ["*Jacobson* is still binding precedent."]; *Big Tyme Invs., L.L.C. v. Edwards,* 985 F.3d 456, 466-68 (5th Cir. 2021); *Robinson v. Att'y Gen.,* 957 F.3d 1171, 1179 (11th Cir. 2020).)

Appellants attempt to distinguish *Jacobson* by arguing that the COVID-19 vaccine is different from the smallpox vaccine because it is designed to reduce symptoms rather than to prevent transmission is a distinction without a meaningful difference. (AOB 11-19.) As the District Court aptly explained, "in <u>Jacobson</u>, the Supreme Court articulated the more general finding that the plaintiff had not demonstrated that 'the means prescribed by the state' to 'stamp out the disease of smallpox' had 'no real or substantial relation to the protection of the public health and the public safety.'" (1-EOR-097.) "<u>Jacobson</u> does not require that a vaccine have

26

a specific purpose of *preventing* disease." (1-EOR-097, emphasis in original.)

Appellants fail to cite any authority for the proposition that LAUSD's Policy violates any substantive due process right or that the Policy's constitutionality is subject to a strict scrutiny analysis. As the U.S. Supreme Court recognized in *Jacobson,* the "liberty secured by the Constitution … does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." (*Jacobson,* 197 U.S. at 26.) Communities have "the right to protect [themselves] against an epidemic of disease which threatens the safety of [their] members." (*Id.* at 27.) It is not the judiciary's role to determine the most effective method of protecting the public from disease; that responsibility rests on other branches of government. (*Id.* at 30.) Rational basis review is "a paradigm of judicial restraint." (*F. C. C. v. Beach Communications., Inc.* (1993) 508 U.S. 307, 314.) Under this test, LAUSD'S Vaccine Mandate is "not subject to courtroom and fact-finding and may be based on rational speculation unsupported by evidence or empirical data." (*Id.* at p. 315.) "To mount a successful challenge, a party must negative every conceivable basis that might support the government's action." (*Johnson v. Dept. of Justice* (2015) 60 Cal.4th 871, 881.) Furthermore, during a public health emergency, an extremely deferential standard of review is applicable to exercises of government authority to protect public health. (*County of Los Angeles Dept. of Public Health,* 61 Cal.App.5th 478, 587 (2021). Under rational basis review,

the government action will be upheld as long as it is not "arbitrary, capricious, or entirely lacking in evidentiary support." (*Id*.)

The exigencies of the COVID-19 pandemic justify the degree of intrusion at issue here and Appellants have not demonstrated that LAUSD's Policy infringes a fundamental constitutional right. Noting the similarity in substantive due process claims between the instant action and in *Jacobson*, the District Court correctly found this case is subject to a rational basis review, which should be affirmed on appeal.

### 2. The District Court Properly Granted the Motion for Judgment on the Pleadings as to the First Cause of Action for Violation of Substantive Due Process Because It Easily Survives Rational Basis Review.

The Due Process Clause prohibits government officials from arbitrarily depriving a person of constitutionally protected liberty or property interests. (*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025-26 (9th Cir. 2007).) As the District Court correctly explained, "'[u]nless a classification trammels fundamental personal rights or implicates a suspect classification, to meet a constitutional challenge the law in question needs only some rational relation to a legitimate state interest.'" (*Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990) citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303-04 (1976).) Appellants cite no authority to support their position that public employees have a fundamental right to refuse vaccination in the midst of a public health emergency, such as the COVID-19 pandemic. Indeed, as detailed herein above, the Supreme Court has long rejected

a fundamental right to refuse vaccination. (*Jacobson, supra,* 197 U.S. at pp. 26-27, 30.) Prior courts considering this issue acknowledged that vaccination efforts go beyond treating the individual and provide a public health benefit to the larger community. (*See Bruesewitz v. Wyeth LLC* (2011) 562 U.S. 223, 226. Therefore, because LAUSD's Policy does not implicate any fundamental constitutional right, it survives due process scrutiny if the Policy is "rationally related to legitimate government interests." (*Glucksberg,* 521 U.S. at 728.)

"'Governmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare.'" (*Sylvia Landfield Trust v. City of Los Angeles,* 729 F.3d 1189, 1193 (9th Cir. 2013).) Rational-basis review is "highly deferential" where Appellants have the burden of "negat[ing] every conceivable basis that might support [the Policy], even if that basis has no foundation in the record." (*Heller v. Doe*, 509 U.S. 312, 320-21 (1993).) In other words, there must be no "reasonable conceivable state of facts that would provide rational basis for the [Policy]." (*FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314 (1993).) A "statute survives rational basis review even if it seems unwise or if the rationale for it seems tenuous." (*Roman v. Evans,* 517 U.S. 620, 632 (1996).)

The two-tiered rational basis inquiry first asks whether the challenged law has a legitimate purpose, then whether the challenged law promotes that purpose. (*Erotic*

*Serv. Provider Legal Educ. and Research Project v. Gascon,* 880 F.3d 450, 457 (9th Cir. 2018).) Put differently, Appellants must prove irrationality; it is not LAUSD's obligation to prove rationality with evidence. (*F.C.C. v. Beach Commc'ns,* 508 U.S. 307, 315 (1993) ["[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data"].) Rational basis review "tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." (*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,* 919 F.3d 1003, 1010 (7th Cir. 2019).) "Given the standard of review, it should come as no surprise [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." (*Trump v. Hawaii,* 133 S.Ct. 2392, 2420 (2018).)

Appellants fail to meet their extraordinary burden of demonstrating that LAUSD's Vaccination Policy lacks any rationality. Although LAUSD bears no evidentiary burden to justify its Policy, it is indisputably related to the District's compelling interest of protecting the health of employees, students, and the public by reducing the spread of COVID-19 and limiting COVID-19 hospitalizations and deaths. (1-EOR-37-43; 1-SER-11-18.) The evidence of the safety and effectiveness of COVID-19 vaccines is overwhelming and requiring vaccines for all LAUSD employees will and has lowered the risks of outbreaks at school sites, decreased the severity of the symptoms of those infected, and minimized employee absenteeism;

thereby allowing students to continue to learn in person. (*See, e.g. Johnson v. Brown,* 567 F.Supp.3d 1230, 1252 (D. Oregon 2021) [holding vaccine requirements "are rationally related to Defendants' interests in slowing the spread of COVID-19, protecting Oregon's citizens, protecting children and teachers in schools, and preserving healthcare resources and protecting patients."]; *Dixon v. De Blasio,* 2021 WL 4750187 at *8 (E.D. N.Y. Oct. 12, 2021) ["right to refuse [COVID] vaccination is not a fundamental right"].) This court need not wade into the underlying science to find Appellants fail to state a viable claim. The District concluded, based on guidance from federal and state public health experts, that requiring vaccinations would protect the health of employees and students.  That decision easily satisfies rational basis review and indeed reflects the scientific consensus on the safety and efficacy of COVID-19 vaccines. (*Biden v. Missouri*, 142 S.Ct. 646, 653-654 (2022) (rejecting argument that COVID-19 vaccine requirement for employees is arbitrary and capricious).) Under rational basis review, if the governmental interest is at least "plausible," court may not second-guess its "wisdom, fairness, or logic." (*Johnson v. Dept. of Justice*, 60 Cal.4th 871, 881 (2015).

Appellants purport that the Second Amended Complaint states a plausible claim because they allege that the COVID-19 vaccine is a medical treatment which LAUSD did not have a legitimate public health reason to require that its staff take. (AOB 11-19.) Simply put, Appellants are wrong. There is no question that LAUSD's

interest in preventing the spread of COVID-19 is not merely legitimate – it is "unquestionably … compelling." (*Cuomo,* 141 S.Ct. at 70.) The Policy was enacted in response to the number of COVID-19 cases and deaths throughout Los Angeles County in an effort to keep schools open for in-person education. (1-EOR-37-43; 1-SER-11-18.) LAUSD's Vaccine Mandate also rests on a plausible foundation based on the conclusions of the CDC, FDA, and CDPH. It is therefore rationally related to the protection of public health. Given the highly contagious nature of COVID-19 and its proven ability to inflict severe illness, hospitalization, long-term health consequences, and death, the CDC and other public health agencies have recommended vaccinations for everyone. (1-SER-15-18.)

Any attempt by Appellants to second-guess public health officials as to the efficacy and need for an employee vaccine mandate does not meet their burden of showing that the Policy lacks a rational basis. (*Does #1-#14 v, Austin,* 572 F.Supp.3d 1223, 1236 (N.D. Fla. 2021) citing *Marsh v. Or. Nat. Res. Council,* 409 U.S. 360, 378 ["When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive"].) LAUSD need only show that its rational is supported by a "reasonably conceivable state of facts," which is a very low bar. (*United States v. Navarro,* 800 F.3d 1104, 1114 (9th Cir. 2015) ["[R]ational basis review allows for decision based on rational speculation

unsupported by evidence or empirical data."]; *Monarch Bev. Co. v. Cook,* 861 F.3d 678, 681 (7th Cir. 2017) [to establish irrationality, plaintiff must negate "every conceiveable basis" that could support the challenged action]; *Kheriaty v. Regents of Univ. of Cal.,* 2021 WL 4714664 at *8 (C.D. Cal. Sept. 29, 2021) [rejecting substantive due process challenge to university's vaccine policy because "merely drawing different conclusions based on consideration of scientific evidence does not render the Vaccine Policy arbitrary and irrational"]; *Guilfoyle v. Beutner,* 2021 WL 4594780 at *16 (C.D. Cal. Sept. 14, 2021) ["[t]he Due Process Clause does not require scientific consensus to justify government action."]

As the U.S. Supreme Court has held, when officials "act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." (*S. Bay United Pentecostal Church,* 140 S.Ct. at 1613-1614.) Unless those limits are "exceeded, they should not be subject to second-guessing by an 'unrelated federal judiciary,' which lacks the background, competence and expertise to assess public health and is not accountable to the people." (*Id.*).

Ultimately, Appellants' disjointed arguments are insufficient to overcome rational basis review. While Appellants urge this Court to allow them the opportunity to conduct discovery, they should not be allowed to go on a fruitless fishing expedition as no amount of discovery can overcome their failed pleading. The District Court's order granting the motion for judgment on the pleadings as to

the first cause of action should be affirmed.

> **a. Judgment Can Be Granted on the Pleadings Because the Second Amended Complaint Does Not Implicate a Constitutionally Protected Right.**

Appellants summarily conclude that their substantive due process claim "cannot be done on the pleadings. It requires the gathering and presentation of evidence at a merits hearing." (AOB 21.) Importantly, Appellants provide absolutely no support for this erroneous contention, and they cannot because it is not correct as a matter of law. Here, Appellants allege a substantive due process claim under 42 U.S.C. section 1983 claiming their right to personal autonomy, self-determination, bodily integrity, and the right to reject medical treatment was violated. (1-EOR-023 ¶80.) This claim fails as a matter of law and no amendment can cure its inherent defects.

For Appellants to proceed under Section 1983, they must allege that (1) they were deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. (*West v. Atkins*, 487 U.S. 42, 48 (1988).) The statute "is not itself a source of substantive rights." Rather, it provides "a method for vindicating federal rights elsewhere conferred." (*Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979).) Here, Appellants fail to allege a deprivation of any right secured by the Constitution or laws of the United States.

A substantive due process right, as opposed to a procedural due process right, is one either listed in the Bill of Rights or one held to be so fundamental that a state may not take it away. (*See generally Youngberg v. Romeo*, 457 U.S. 307 (1982).) "[T]he question is whether the official's action improperly [unconstitutionally] impinged on an individual's right to personal autonomy to the extent that that autonomy is guaranteed by the Constitution." (*Love v. King*, 784 F.2d 708, 712 n. 4 (5th Cir. 1986).) "[I]n order to maintain a § 1983 claim under the Fourteenth Amendment one must allege the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution." (*Id*. at 712.) Appellants cannot meet this burden.

Citing to *Jacobson,* courts have repeatedly upheld mandatory vaccination laws against constitutional challenges. More than a decade after *Jacobson* was decided, the U.S. Supreme Court reaffirmed its holding in *Zucht v. King*, which unanimously held that a public school system could refuse admission to a student who failed to receive a required vaccination. (*Zucht v. King*, 260 U.S. 174 (1922).) More recently, in *Love v. State Dep't of Educ.*, the California court of appeal held that a statute repealing the personal belief exemption to immunization requirements for students as a condition of enrollment in school promoted not just a legitimate, but a compelling government interest of ensuring health and safety by preventing spread of contagious diseases in response to a substantive due process challenge

based on the right to bodily autonomy and to refuse medical treatment. (*Love v. State Dep't of Educ.*, 29 Cal.App.5th 980, (2018), citing *Zucht,* 260 U.S. 174 ["as our colleagues pointed out in *Brown*, 'compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases'" and "federal and state courts, beginning with *Abeel*, have held 'either explicitly or implicitly' that 'society has a compelling interest in fighting the spread of contagious diseases through mandatory vaccination of school-aged children"]; *Brown v. Smith*, 24 Cal.App.5th 1135, 1146 (2018).)

Although this Ninth Circuit has yet to decide a case involving a challenge to a mandatory vaccination law, other circuits and the California Supreme Court have repeatedly done so. In fact, since *Jacobson, Zucht* and *Love*, a long line of cases have upheld mandatory vaccination laws over constitutional challenges, with recent decisions focusing on vaccination mandates in the context of employees challenging termination decisions that were based on a refusal to be vaccinated[2] and in the context of the vaccination of students as a condition of enrollment.[3]

___

[2] *Hustvet v. Allina Health Sys.*, 910 F.3d 399 (8th Cir. 2018) [affirming summary judgment for healthcare employer where employee who worked with potentially vulnerable clients was terminated for refusing MMR vaccine]; *Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pennsylvania*, 877 F.3d 487 (3d Cir. 2017) [affirming dismissal of medical center employee's religious discrimination claim under Title VII, based on termination for refusal to receive flu vaccine].)

[3] *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) [upholding vaccination mandate for school children and holding that substantive due process

As Appellants have not and cannot articulate any constitutional right upon which a violation of substantive due process has occurred, the District Court properly granted LAUSD's motion for judgment on the pleadings as to the substantive due process claim. Indeed, judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. (*Harris,* 682 F.3d at 1131.)

### b. Judgment Can Be Granted on the Pleadings Because Appellees Are Not "Persons" Under Section 1983.

Appellees' substantive due process cause of action is against individual defendants acting in their official capacity as employees of LAUSD. (1-SER-2-50.) Section 1983 imposes liability against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." (42 U.S.C. § 1983.) However, "neither a State nor its

---

challenge was foreclosed by *Jacobson,* "as *Jacobson* made clear, that [mandatory vaccination] is a determination for the legislature, not the individual objectors"]; *Whitlow v. California*, 203 F.Supp.3d 1079 (S.D. Cal. 2016), citing to *Abeel v. Clark*, 84 Cal. 226 (1890) [California Supreme Court upheld the State's mandatory vaccination law as a proper exercise of police powers under the California Constitution, allowing a public school to exclude a child who had not been vaccinated in accordance with the law]; *Workman v. Mingo Cty. Sch.*, 667 F. Supp. 2d 679 (S.D. W.Va. 2009) [holding that mandatory immunization program for school children did not violate free exercise, equal protection, or due process rights].

37

officials acting in their official capacities are 'persons' under § 1983." (*Witt v. Mich. Dep't of State Police*, 491 U.S. 58,71 (1989).) As the U.S. Supreme Court explained, "[o]bviously state officials are literally persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (*Id.*)

Applying the principles from *Witt*, the court in *McAllister v. Los Angeles Unified School District*, considered whether a schoolteacher could bring suit under Section 1983 against a school district *and* its superintendent. (*McAllister,* 216 Cal.App.4th 1198,1201-02 (2013).) The court explained that in deciding "whether a section 1983 claim may lie against a state official, we must analyze 'the capacity in which the state officer is sued …'" (*Id.* at 1208 quoting *Hafer v. Melo,* 502 U.S. 21, 26 (1991).) A state, an entity acting as an "arm of the state," or a state official sued in his official capacity may not be considered a "person" who may be liable under Section 1983. (*Id* at 1209.) In *McAllister,* the court found the former teacher sued the superintendent only in his official capacity and not in his personal capacity, and thus the superintendent was not subject to liability under Section 1093, where the caption of the complaint listed the superintendent's job title after his name, and alleged that the superintendent violated her rights "under color of law" and "pursuant to the policies, practices, directives and procedures" of the school district. (*Id.* at 1213, 1220; see also *Kirchmann v. Lake Elsinore Unified School Dist.*, 83

Cal.App.4th 1098, 1115 (2000) [confirming that a school district as an "arm of the state" was not subject to liability under § 1983 claim].

Here, as in *McAllister*, Appellants are attempting to bring a Section 1983 cause of action against several school officials, who were all acting in their employed capacities at LAUSD at the time of issuance of the COVID-19 Policy. However, as the court held in *Witt*, a Section 1983 claim is invalid against state officials, unless those officials are sued in a personal capacity. Appellants' factual allegations clearly indicate all individual Defendants are being sued in their official capacity, because all of the actions alleged by Appellants were committed while these individuals were acting as Superintendent, Chief of Human Resources, and Board Members. (1-EOR-2-50.) Indeed, the caption of the Second Amended Complaint expressly names them in their official capacity with their LAUSD titles. (1-EOR-2.)

Therefore, Appellants' Section 1983 claim fails to state a cause of action and the District Court properly granted judgment on the pleadings as to substantive due process without leave to amend.

3. **The District Court Properly Granted Judgment on the Pleadings as to Appellants' Equal Protection Claim Because the Policy Easily Survives Rational Basis Review.**

   a. **Vaccination-Based Distinctions Have Never Been Recognized Under the Equal Protection Clause and Easily Endure Rational Basis Review.**

Equal protection of the laws assures that people who are "similarly situated for purposes of [a] law" are generally treated similarly by the law. (*Cooley v. Superior Cour*t (2002) 29 Cal.4th 228, 253.) Appellants' attempt to construct a vaccination-based distinction to substantiate alleged equal protection violations is unavailing. Appellants provide no supporting legal authority that vaccination status is a suspect classification warranting strict scrutiny analysis. The rational basis standard of review is "the basic and conventional standard for reviewing economic and social welfare legislation in which there is a 'discrimination' or differentiation of treatment between classes or individuals." (See *Vergara v. State of California* (2016) 246 Cal.App.4th 619, 645)

"A statutory classification fails rational-basis review only when it 'rests on grounds wholly irrelevant to the achievement of the State's objective.'" (*Heller*, 509 U.S. at 324 quoting *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71, 99 (1978).) "In the absence of deprivation of a fundamental right or the existence of a suspect class, the proper standard of review is the rational basis test." (*Halgren,* 577 F.Supp.3d at 752.) Thus, if there is no suspect class or fundamental right at issue,

differential treatment is presumed to be valid, so long as it is "rationally related to a legitimate state interest." (*City of Cleburne v. Cleburne Living Center, Inc*, 473 U.S. 432, 439–440.) Based on this authority, the Policy need only survive rational basis review.

Under the rational basis test, Appellants fail to show that the Policy violates equal protection. The Equal Protection Clause is satisfied so long as there is a "plausible policy reason for the classification," the government decisionmaker relied on facts that "may have been considered to be true," and "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." (*Nordlinger v. Hahn,* 505 U.S. 1, 11 (1992).) First, as described above, Appellants cannot show that the rights implicated by the Policy constitute "fundamental rights" under the Constitution, as courts have uniformly rejected the argument that vaccination requirements imposed to protect public health require a heightened level of review. Second, even assuming the Policy treats groups differently based on their vaccination status as alleged in the Second Amended Complaint, Appellants identify no legal support for the notion that vaccination status, alone, is a traditional suspect (or quasi-suspect) class within the meaning of the Equal Protection Clause. (*See, e.g., Halgren,* 577 F.Supp.3d at 753.)

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all

relevant respects alike." (*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).) "Classifications that do not implicate fundamental rights or a suspect class are permissible so long as they are 'rationally related to a legitimate state interest.'" (*United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017) quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).) "Evidence of different treatment of unlike groups does not support an equal protection claim." (*Wright v. Incline Village Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011).)

Under rational basis review, if there are "plausible reasons" for challenged government action, the challenged governmental action survives. (*FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) ["a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification"]; *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) ["Where there are plausible reasons for legislative action, our inquiry is at an end"].) Likewise, under rational basis review the government's choice "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." (*Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1087 (9th Cir. 2015); *Beach Commc'ns,* 508 U.S. at 318-20 [upholding challenged statute where government showed a "conceivable basis" for distinctions drawn].)

The COVID-19 Policy is applicable to all LAUSD employees, and as explained above, does not implicate fundamental rights or make suspect classifications or classifications strictly based on vaccination status. In fact, the Second Amended Complaint acknowledges that there are procedures in place allowing Appellants to seek an exemption from the Policy. (1-EOR-068-069 ¶¶73-77.) Such distinctions, even where persons remain unvaccinated due to personal or religious beliefs, are subject to rational basis review. (*Whitlow v. California*, 203 F. Supp. 3d at 1087 [finding students with personal belief exemptions to required vaccines were "not similarly situated to children without [personal belief exemptions]"].) This same rule applies under California's Equal Protection Clause. (*See Brown v. Smith*, 24 Cal. App. 5th at 1147 [upholding mandatory vaccine law against Article I, § 7 challenge where alleged class was defined by vaccination status; citing *Whitlow* with approval].) Thus, rational basis review applies here.

There is a clear rational basis for LAUSD's COVID-19 Policy, which treats vaccinated employees (and those with appropriate exemptions) differently than those without the vaccination. The Policy is rationally related to a legitimate and constitutionally mandated state interest in promoting and providing the safest environment possible to all employees and students against the COVID-19 virus. (1-EOR-37-43; 1-SER-11-18.) The California Constitution and Education Code guarantee the right to a safe, secure and peaceful school for all students and staff.

43

(Cal Const art I, Sec 28(c)(1) and Education Code § 44807.) The facts as alleged in the Second Amended Complaint fail to demonstrate the Policy as being "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." (*Vill. of Euclid, Ohio v. Amber Realty Co*., 272 U.S. 365, 395 (1926); *Hoeck v. City of Portland*, 57 F.3d 781,786 (9th Cir. 1995), as amended (July 10, 1995).)

Because the Policy survives rational basis review and no facts are alleged demonstrating otherwise, Appellants must show more than an unconstitutional application as to some (*e.g*., those with natural immunity), they "must demonstrate that no possible application" of the Policy is constitutional. (*Does #1-#14,* 572 F.Supp.3d at 1240.) Appellants offer no credible evidence demonstrating that no possible application of the Policy is constitutional. To the contrary, as the extensive authority cited herein establishes, the Policy survives constitutional muster and, in fact, is far less broad than the mandate in *Jacobson*, in that it affects only those employees of the LAUSD and not the general public.

Importantly, policies survive this standard even when they are "significantly over-inclusive or under-inclusive," so long as they bear some rational connection to the policy's goal. (*Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001) quoting *Beach Commc'ns*, 508 U.S. at 314.) As a result, the Policy easily survives rational basis review and the District Court's order granting LAUSD's motion for judgment

44

on the pleadings as to the second cause of action should be affirmed.

**b. Despite the District Court Granting Leave to Amend, Appellants Refused to Do So.**

In granting leave to amend as to the Equal Protection claim, the District Court cautioned Appellants that a "failure to file by the date will waive the right to do so." (1-EOR-103 No. 74.) Appellants failed to file an amended complaint despite having been granted leave. A motion for judgment on the pleadings has the same function as a general demurrer but is made after the time for demurrer has expired, or after an answer has been filed. The rules governing demurrers apply. (*Lance Camper Mfg. Corp. v. Republic Indem. Co. of America* (1966) 44 Cal.App.4th 194, 198; *Smiley v. Citibank* (1995) 11 Cal.4th 138, 145-46.) To overcome dismissal, Appellant must show that the trial court abused its discretion in dismissing the complaint after Appellant failed to file an amended complaint within the period of leave granted by the trial court. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.) The court will uphold "the court's exercise of discretion if it is based upon a 'reasoned judgment and complies with the legal principles and policies appropriate to the particular matter at issue." (*Bullis v. Security Pacific Bank* (1978) 21 Cal.3d 803, 815.) In particular, a court's discretion to dismiss for failure to timely amend should not be disturbed "unless it appears that there has been procedural error." Collazo, 177 Cal.App.3d at 1054 (1986). Here, the Court did not abuse its discretion and its judgment should be affirmed.

**B. Eleventh Amendment Sovereign Immunity Applies Because Appellants Admit Their End Goal Is an Award of Monetary Damages.**

"The Eleventh Amendment prohibits federal courts from hearing 'any suit in law or equity, commenced or prosecuted against one of the United States....' The prohibition 'encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.'" (*Kirchmann v. Lake Elsinore Unified Sch. Dist.*, 83 Cal.App.4th 1098, 1101 (2000), *as modified on denial of reh'g* (Oct. 11, 2000); *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997).) An entity enjoys state sovereign immunity under the Eleventh Amendment if it is deemed an "arm of the state" government. (*Ammend v. BioPort Inc.*, 322 F.Supp.2d 848, 856 (W.D. Mich. 2004) quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).) The Eleventh Amendment bars suits against the state, arms of the state or its officials, absent a valid waiver or abrogation of its sovereign immunity. (*Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Will v Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).) There is no such waiver or abrogation applicable here.

This Ninth Circuit has determined that public school districts are to be considered arms of the State for purposes of immunity analysis. (*Belanger v. Madera*

*Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992).) The immunity applies as to the school district regardless of whether the district is sued for damages or injunctive relief. (*See Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Lawsuits against state officials in their official capacity are deemed to be lawsuits against the state itself. (*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1999) ["state officials sued in [their] official capacity for damages are absolutely immune from liability under the Eleventh Amendment."].)

For purposes of Eleventh Amendment immunity, a claim for damages that would be paid by the state or an arm of the state is barred. (*Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir. 1992).) Appellees recognize sovereign immunity does not bar claims against individuals sued in their official capacity seeking *prospective injunctive relief* against state officials to remedy an *ongoing violation of federal law*. (*Ex Parte Young*, 209 U.S. at 149-56; *Arizona Students' Association v. Arizona Board of Regents*, 824 F.3d 858, 865, emphasis added.) While Appellants are not *currently* seeking monetary damages but rather seeking only prospective equitable relief, Appellants' conduct, as well as the allegations in the Second Amended Complaint, prove otherwise.

According to the Second Amended Complaint, in August 2021 LAUSD employees were notified of the Policy and advised that they would need to receive their first does of the COVID-19 vaccine by October 1, 2021. (1-EOR-004 ¶¶ 4-5,

037-043.) According to the Second Amended Complaint, if an employee did not comply with the October 1, 2021, first-dose vaccination deadline, the employees would be subject to suspension or termination as of November 1, 2022. (1-EOR-004 ¶¶ 4-5, 037-043.) Appellants did not file the Second Amended Complaint until *seven* months after they were advised of the Policy and nearly *four* months *after* the alleged adverse employment actions were supposed to have taken place. At no time since the filing of the original Complaint in March 2021, or since the LAUSD notified employees of the Policy in August 2021, have Appellants moved for a preliminary injunction or any other form of emergency relief.

Instead, Appellants are pursuing the instant lawsuit in which they purport to seek *prospective* relief with the understanding that the Policy was instituted months ago and that any judgment in this case will not be entered for many more months. At that point, any injunction or declaratory judgment would likely be moot. If Appellants' true intention was to halt imposition of the Policy, their actions in this lawsuit would align accordingly. Therefore, by way of the Second Amended Complaint, Appellants are actually seeking a *retroactive* determination that the Policy is unlawful.

Appellants' own allegations in the Second Amended Complaint reveal their true motivations, i.e., a retroactive finding of unlawfulness that can be used to recover monetary damages. Paragraph 22 of the Second Amended Complaint

alleges:

> Defendants, through their acts and omissions complained of herein are liable to Plaintiffs for damages in an amount to be proven at trial, including, but limited to, damages for lost income, loss of employment opportunities and deprivation of constitutional and other civil rights. But for Defendants' qualified immunity this suit would include a demand that Plaintiffs be compensated for these damages. Upon information and belief, discovery will reveal grounds for claiming one or more exceptions to the doctrine of qualified immunity. If that occurs, Plaintiffs will seek leave to amend this Complaint to assert claims for money damages against Defendants in their individual capacities.

(1-EOR-009 ¶22.)

The Second Amended Complaint admits that, but for the immunity enjoyed by the LAUSD, and by extension, Appellants sued in their official capacities, Appellees would be seeking monetary damages and intend to seek such damages if permissible. Ultimately, the Second Amended Complaint is a carefully crafted attempt to do an end-run around the sovereign immunity provided for by the Eleventh Amendment. (*See, e.g., Green v. Mansour*, 474 U.S. 64, 72-73 (1985).)

The only purpose the issuance of a declaratory judgment in this case would be to serve as a basis for which Appellants may fulfill their stated plan (as outlined in Paragraph 22 of the Second Amended Complaint) to seek monetary damages and related relief. As the Court in *Green* noted, "the issuance of declaratory judgment in these circumstances would have much the same effect as a full-fledged award of

damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." (*Id*. at 73, citing *Public Service Commission of Utah v. Wycoff Co., Inc*., 344 U.S. 237, 247.)

Because Appellants are not actually seeking prospective, injunctive relief but rather a retroactive declaration that the Policy is unlawful which they can ultimately use to obtain monetary damages against Appellees in their individual capacities, the *Young* doctrine is inapplicable and Appellees are entitled to Eleventh Amendment immunity. Although in granting Appellant's motion for judgment on the pleadings the District Court rejected the Appellees' Eleventh Amendment argument, this Court may affirm on any ground that has support in the record, whether or not the district court decision relied on the same grounds or reasoning adopted by the appellate court. (*Logan,* 722 F.3d at 1169.)

## VIII. CONCLUSION

Defendants and Appellees respectfully requests this Court affirm the Order of the District Court Granting Defendants' Motion for Judgment on the Pleadings and the resulting Judgment and deny Plaintiffs' and Appellants' appeal in its entirety.

Dated:  March 6, 2023        LITTLER MENDELSON, P.C.

Connie L. Michaels
Carrie A. Stringham
Attorneys for Defendants and
Appellees

## STATEMENT OF RELATED CASES

There are no known related cases pending in the Ninth Circuit Court of

Appeals.

Dated: March 6, 2023                    LITTLER MENDELSON, P.C.


_____
Connie L. Michaels
Carrie A. Stringham
Attorneys for Defendants and
Appellees

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) because this brief contains 11,885 (under 14,000) words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, in 14-point Times New Roman.

Dated: March 6, 2023

LITTLER MENDELSON, P.C.

_____
Connie L. Michaels
Carrie A. Stringham
Attorneys for Defendants and
Appellees

## CERTIFICATE OF SERVICE

I certify that on March 6 2023, I electronically filed the foregoing using

the appellate CM/ECF system which will send notification of such filing to:

John W. Howard
JW Howard Attorneys, Ltd.
600 W Broadway, Suite 1400
San Diego, CA 92101
Email: johnh@jwhowardattorneys.com
Email: sstreet@jwhowardattorneys.com

George Robinson Wentz Jr.
The Davillier Law Group, LLC
935 Gravier Street
Suite 1702
New Orleans, LA 70112
Email: gwentz@davillierlawgroup.com

Dated: March 6, 2023                    LITTLER MENDELSON, P.C.

Connie L. Michaels
Carrie A. Stringham
Attorneys for Defendants and
Appellees