**No. 22-55908**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____

Health Freedom Defense Fund *et al.*,

*Plaintiffs-Appellants*,

v.

Megan K. Reilly *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-08688-DSF-PV
Hon. Dale S. Fischer

_____

**APPELLANTS' REPLY BRIEF**

_____

John W. Howard (Cal. Bar No. 80200)
Scott J. Street (Cal. Bar No. 258962)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: 619-234-284
Email:
johnh@jwhowardattorneys.com
sstreet@jwhowardattorneys.com

*Attorneys for Appellants Health Freedom*
*Defense Fund et al.*

# **TABLE OF CONTENTS**

INTRODUCTION………………………………………………………..7

ARGUMENT…………………………………………………………10

    A. The Balancing Test Used in Substantive Due Process Cases
       Requires the Development of a Factual Record…………………10

    B. The Rational Basis-Plus Test Used to Decide Equal Protection
       Cases Brought by Politically Unpopular Groups Also Requires the
       Development of a Factual Record…………………………...…18

    C. The Eleventh Amendment Does Not Bar This Case…………....22

    D. This Is Not a Merits Proceeding…………………………..25

CONCLUSION………………………………………….…………..26

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Boone v. Bozeman*,

    217 F. Supp. 2d 938 (E.D. Ark. 2002)……………………………………..13

*Bruesewitz v. Wyeth, LLC*,

    562 U.S. 223 (2011) …………………….…………………………………17

*Cavuoto v. Buchanan Cnty. Dep't of Soc. Servs.*,

    605 S.E.2d 287 (Va. Ct. App. 2004) …………………………………………13

*Cleburne v. Cleburne Living Center*,

    473 U.S. 432 (1985) …………………………………………………………19

*Compassion in Dying v. State of Wash.*,

    79 F.3d 790 (9th Cir. 1996), as amended (May 28, 1996)……………..12,13

*Cornel v. Hawaii*,

    37 F.4th 527 (9th Cir. 2022) …………………………………18, 22

*Dep't of Agriculture v. Moreno*,

    413 U.S. 528 (1973) …………………………………………………………19

*Dixon v. DeBlasio*, No. 21-cv-5090 (BMC),

    2021 WL 4750187 (E.D.N.Y. Oct. 12, 2021). ……………………………..15

*Dixon v. DeBlasio*,

No. 21-2666, 2022 WL 961191 (2d Cir. Mar. 28, 2022)…………….……..16

*Doe v. Lawrence Livermore Nat'l Lab'y*,

131 F.3d 836, 839 (9th Cir. 1997)…………………………………………….23

*Edelman v. Jordan*,

415 U.S. 651 (1974)……………………………………………….…..24

*Ex parte Young*,

209 U.S. 123 (1908) ………………………..……………....……..22

*F.C.C. v. Beach Communications, Inc.*,

508 U.S. 307 (1993)……………………………………………………..15

*Golinski v. United States Office of Personnel Management*,

824 F. Supp. 2d 968 (N.D. Cal. 2012) ……………………….…………19

*Gray by Gray v. Romeo*

697 F. Supp. 580 (D. R.I. 1988).……………..……………………....…7

*Green v. Mansour*,

474 U.S. 64 (1985) ……………………………………………..……24

*Guertin v. State*,

912 F.3d 907 (6th Cir. 2019) ………………………………………….12

*Halgren v. City of Naperville,*

577 F. Supp. 3d 700 (N.D. Ill. 2021)………………………………….11, 14

*Hollingsworth v. Perry*,

    570 U.S. 693 (2013)…………………………………………………………20

*Jacobson v. Commonwealth of Massachusetts*,

    197 U.S. 11 (1905) …………………………………….…………….……11-13, 25

*Johnson v. Brown*,

    567 F. Supp. 3d 1230 (D. Or. 2021) …………………………...……………15

*Johnson v. Department of Justice*,

    60 Cal.4th 871 (2015) ……………………………………………………15

*Jordan v. Trainor*,

    563 F.2d 873 (CA7 1977) (en banc)………………………….……..24

*Klaassen v. Trustees of Indiana University*,

    7 F.4th 592 (7th Cir. 2021) ……………………………………….……….10

*Lockary v. Katz*,

    917 F.2d 1150 (9th Cir. 1990) …………………………………………..16

*Los Angeles Department of Public Health v. Superior Court*

    *(Cal. Restaurant Assoc., Inc.)*, 61 Cal. App. 5th 478 (2021)………………15

*Lukaszczyk v. Cook County*,

    47 F.4th 587 (7th Cir. 2022) …………………………………….…10-12, 14

*N.E. Med. Servs., Inc. v. Cal. Dep't of Health Care Servs. Agency,*

    712 F.3d 461 (9th Cir. 2013)………………………………………………23

4

*Perry v. Brown*,

    671 F.3d 1052 (9th Cir. 2012).………………………………………20

*Porter v. Jones*,

    319 F.3d 483 (9th Cir. 2003) …………………………………………23

*Quern v. Jordan*,

    440 U.S. 332 (1979). …………………………………………………24

*Romer v. Evans*,

    517 U.S. 620 (1996) …………………………………………………18

*Sell v. United States*,

    539 U.S. 166 (2003) …………………………………………………13

*Stanley v. Georgia*,

    394 U.S. 557 (1969) …………………………………………………8

*Stormans, Inc. v. Wiesman*,

    794 F.3d 1064 (9th Cir. 2015) ………………………………………..14

*Troogstad v. City of Chicago,*

    576 F. Supp. 3d 578 (N.D. Ill. 2021) …………………………………...11

*Tucson Woman's Clinic v. Eden*,

    371 F.3d 1173 (9th Cir.) ……………………………………………..21

*Ty, Inc. v. GMA Accessories, Inc.*,

    132 F.3d 1167 (7th Cir. 1997) ………………………………………..14

5

*United States v. Kincaide*,

    379 F.3d 813 (9th Cir. 2004) …………………………………..…………….25

*United States v. Pepe*,

    895 F.3d 679 (9th Cir. 2018). …………………………..…………………20

*Whalen v. Roe*,

    429 U.S. 589 (1977) …………………………………………………..8

*Williams v. DeLeon,*

    No. 115-CV-00543-SKOPC, 2018 WL 4352902
    (E.D. Cal. Sept. 11, 2018) …………………………………………12

*Winter v. Natural Resources Defense Council, Inc.*,

    555 U.S. 7 (2008) ………………………………….……………………11

*Witt v. Department of the Air Force*,

    527 F.3d 806 (9th Cir. 2008) …………………………………………13


**Statutes**

42 U.S.C. § 1983…………………………………….……………………..18, 22


**Other**

B. Franklin, *Historical Review of Pennsylvania* (1759) …………………………26

6

**INTRODUCTION**

This case raises a simple question: what standard applies when individuals challenge government action that interferes with their interest in their bodily autonomy?

Appellees, the Los Angeles Unified School District ("LAUSD") officials responsible for making and enforcing the COVID-19 vaccine policy at issue here, argue that the "rational basis" test applies. They are wrong. The rational basis test originated in equal protection cases that do not involve a suspect class. Substantive due process cases involving fundamental rights are governed by a different standard: the balancing test that Judge Reinhardt described for this Court in the *Glucksberg* right-to-die case. To the extent courts, like the District Court below, have applied the rational basis test in substantive due process cases involving bodily autonomy, they have erred. This Court should clarify that. It should provide a clear standard to govern future substantive due process cases.

Appellees' responding brief did not show otherwise. It argued that LAUSD's attempt to coerce Appellants into getting the COVID-19 shot, against their will, does not implicate any constitutionally protected rights. They are wrong. "The right to control medical decisions affecting one's body is deeply rooted in our country's history and tradition." *Gray by Gray v. Romeo*, 697 F. Supp. 580, 584 (D. R.I. 1988). Indeed, the recognition of this right, and its expansion in the second

half of the twentieth century, is one of the modern Supreme Court's greatest achievements. "This right, whether described as the principle of personal autonomy, the right of self-determination, or the right of privacy, is properly grounded in the liberties protected by the Fourteenth Amendment's due process clause." *Id.* at 585.

Although properly expanded in recent decades, this right is not new. "The makers of our Constitution … recognized the significance of man's spiritual nature, of his feelings and of his intellect. [They] sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." *Stanley v. Georgia*, 394 U.S. 557, 565-66 (1969) (quotations omitted); *see also Whalen v. Roe*, 429 U.S. 589, 599 n.24 (1977) (noting that constitutional right to privacy includes "the right of an individual to be free in action, thought, experience, and belief from governmental compulsion").

This does not mean that Appellants automatically win when they invoke this right. That is the point of the balancing test. But, by its very nature, a balancing test involves the weighing of facts. That cannot be done at the pleading stage. It requires the development of evidence and an evidentiary hearing.

8

Appellants never got that chance. The District Court granted judgment on the pleadings. It dismissed the case without even hearing oral argument, with little analysis, and based on a flawed interpretation of the law governing substantive due process claims. It erred. The Court should reverse the order for that reason alone.

The Court should also give Appellants the chance to conduct discovery and present evidence that Appellees violated their rights under the Equal Protection Clause because LAUSD's COVID-19 vaccine policy did not serve its intended purposes and was adopted solely to punish people who did not follow their employer's order to take the shot. Appellants recognize that equal protection claims that do not involve a suspect classification must be analyzed using the rational basis test. But the Supreme Court has allowed courts to look beyond the pleadings and take a practical approach to cases that, while not involving a suspect class like race or gender, involve a politically unpopular minority. In this context, the "unvaccinated" qualify.

Again, this does not mean that Appellants will win this case. But they alleged facts that, accepted as true and liberally construed in their favor, stated a plausible claim to relief under the Equal Protection Clause. They deserve a chance to gather evidence, to present that evidence to the finder of fact and to get a reasoned decision based on it.

That is all Appellants have ever asked for. They did not get it from the District Court. It clearly erred. The Court should correct that error, vacate the judgment of dismissal, and remand the case for further proceedings.

## ARGUMENT

The District Court's judgment should be reversed because, accepting its allegations as true, the SAC states a plausible claim to relief under the Due Process and Equal Protection Clauses of the U.S. Constitution.

### A. The Balancing Test Used in Substantive Due Process Cases Requires the Development of a Factual Record.

Appellants' Opening Brief explained why the SAC states a claim under the Constitution's Substantive Due Process Clause. It explained how the balancing test this Court and the Supreme Court have used in bodily autonomy cases differs from the rational basis test employed in an equal protection analysis. *See* Appellants' Opening Brief at 12-24. Most importantly for this stage, it requires the development of a factual record. Nobody can conduct a balancing test without evidence that has been properly gathered and presented to the finder of fact.

Appellees ignored those arguments. They relied heavily on two COVID-related opinions issued by the Seventh Circuit Court of Appeals: *Lukaszczyk v. Cook County*, 47 F.4th 587 (7th Cir. 2022), and *Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021). Neither case discussed the procedural issues raised in this appeal. Both affirmed the district court's denial of the

plaintiffs' motion for a preliminary injunction, a high standard in which the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). Given that high standard, and the discretionary standard of appellate review (clear error), it is no surprise that the Seventh Circuit denied the plaintiffs' motion for an injunction pending appeal with little analysis (and just a short opinion) in *Klaassen*.

*Lukaszczyk* involved a more thoughtful analysis, with the Seventh Circuit noting that *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), was both "factually distinguishable" because of the differences between COVID-19 and smallpox and "legally and historically distinguishable" because it predated the modern forms of constitutional scrutiny, as well as the Supreme Court's development of substantive due process law.[1] 47 F.4th at 600-01. Thus, *Lukaszczyk* does not support Appellees' argument that, under *Jacobson*, all vaccine policies are lawful, and courts should not exercise judicial review when somebody questions

---

[1] The *Lukaszczyk* decision involved appeals from three cases (*Lukaszczyk* plus *Troogstad v. City of Chicago,* 576 F. Supp. 3d 578 (N.D. Ill. 2021), and *Halgren v. City of Naperville,* 577 F. Supp. 3d 700 (N.D. Ill. 2021)) in which the district courts denied motions for a preliminary injunction to stop the enforcement of a mandatory COVID-19 vaccination policy.

them. To the contrary, *Lukaszczyk* held that, while "*Jacobson* instructed that in emergency circumstances courts defer to the executive and legislative branches," courts "do not abdicate their constitutional role. If a policy has 'no real or substantial relation to its ends, the Court in *Jacobson* reasoned, courts had a duty to intervene." *Id.* at 601 (quoting *Jacobson*, 197 U.S. at 31).

That language is consistent with Appellants' argument. Appellees are not legislators. They are not governors. And they did not issue the vaccine policy that is being challenged in this case under emergency conditions, without time to think beforehand. To the contrary, LAUSD issued the instant policy after announcing—and then withdrawing—a similar policy. ER 003-004.

The Seventh Circuit's discussion in *Lukaszczyk* also comports with this Court's historical understanding of *Jacobson* as a case in which the Supreme Court "'balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease.'" *Compassion in Dying v. State of Wash.*, 79 F.3d 790, 799 (9th Cir. 1996) (en banc), as amended (May 28, 1996) (quoting *Cruzan v. Director or Missouri Dep't of Health*, 497 U.S. 261, 278 (1990)). They are not alone, as the Sixth Circuit has cited *Jacobson* as a balancing case and found that a competent adult has a right to refuse unwanted medical treatment. *Guertin v. State*, 912 F.3d 907, 920 (6th Cir. 2019). Others have echoed that reasoning. *See, e.g., Williams v. DeLeon,* No. 115-CV-00543-SKOPC, 2018

12

WL 4352902, at *9 (E.D. Cal. Sept. 11, 2018) (describing *Jacobson* as case in which Supreme Court "balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease"); *Cavuoto v. Buchanan Cnty. Dep't of Soc. Servs.*, 605 S.E.2d 287, 288 (Va. Ct. App. 2004) (discussing competent adult's right to refuse unwanted medical treatment and describing *Jacobson* as "balancing" case); *Boone v. Bozeman*, 217 F. Supp. 2d 938, 955-56 (E.D. Ark. 2002) (citing *Cruzan* for the proposition that deciding "whether [an individual's] constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests" (quotations omitted)).

Judge Reinhardt discussed those principles in *Compassion in Dying*, which Appellants discussed at length in their opening brief. He has not been the only one. In *Witt v. Department of the Air Force*, 527 F.3d 806 (9th Cir. 2008), a panel led by Judge Gould reversed an order dismissing a substantive due process claim brought by a female Air Force commander who alleged that she had been suspended from duty because she was a lesbian. The Court applied something more than rational basis review, but something less than strict scrutiny, to that claim. It did so based on a forced-medication case, *Sell v. United States*, 539 U.S. 166, 178-80 (2003), in which the Court "recognized a 'significant' liberty interest … and balanced that liberty interest against the 'legitimate' and 'important' state

13

interest 'in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself and others.'" *Witt*, 527 F.3d at 818 (quoting *Sell*, 539 U.S. at 178).

True, the Seventh Circuit found that the plaintiffs did not meet their burden of showing a likelihood of success on the merits of their COVID-related due process claims in *Lukaszczyk*. 47 F.4th at 603. But those cases involved evidentiary hearings. *See, e.g., Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) (explaining why evidentiary hearing is generally required for preliminary injunction motions). Both sides had a chance to gather and present evidence.[2] They had a chance to persuade a judge with evidence and argument. Appellants did not get that chance. The District Court did not even allow oral argument on Appellees' motion for judgment on the pleadings. It granted the motion just four days after Appellees filed their reply brief, ten days before the date reserved for oral argument. Dist. Ct. ECF 80, 82.

Thus, *Lukaszczyk* does not compel affirmance here. Neither does *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1087-88 (9th Cir. 2015). That case was brought by a pharmacy and pharmacists who objected, on religious grounds, to state rules

---

[2] For whatever reason, the plaintiffs in *Troogstad* said "they did not need discovery and would not be presenting any witnesses …." 576 F. Supp. 3d at 583. In *Halgren*, "each of the parties decided to forgo the option to conduct discovery prior to the hearing or to present evidence or live testimony subject to cross-examination." 577 F. Supp. 3d at 720.

that required them to dispense certain drugs. The Court held that the rules did not violate the Substantive Due Process Clause. But *Stormans* came to this Court "[a]fter a twelve-day bench trial" following which "the district court ruled in Plaintiffs' favor, issuing an opinion accompanied by extensive findings of facts and conclusions of law." *Id.* at 1074. This case has not reached that point.

The other cases Appellees relied on can be distinguished for other reasons. Many of them—including *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993), and *Johnson v. Department of Justice*, 60 Cal.4th 871, 881 (2015)— involved equal protection claims in which the courts applied the traditional, highly deferential (and almost impossible to satisfy) rational basis test to classifications that did not involve a suspect class. They did not discuss, much less apply, the balancing test that both this Court and the Supreme Court have applied in substantive due process cases involving an individual's interest in bodily autonomy. Similarly, the complaint in *Los Angeles Department of Public Health v. Superior Court (Cal. Restaurant Association, Inc.)*, 61 Cal. App. 5th 478, 485-86 (2021), sought mandamus relief under state law and was decided after an evidentiary hearing.[3]

---

[3] As in the Seventh Circuit cases, judges denied motions for preliminary injunctive relief in *Johnson v. Brown*, 567 F. Supp. 3d 1230 (D. Or. 2021), and *Dixon v. DeBlasio*, No. 21-cv-5090 (BMC), 2021 WL 4750187 (E.D.N.Y. Oct. 12, 2021). The Second Circuit also *vacated* the district court's decision in *Dixon*, at the

Meanwhile, other cases cited by Appellees support Appellants' position in this appeal. For example, in *Lockary v. Katz*, 917 F.2d 1150 (9th Cir. 1990), the plaintiffs argued that a government moratorium on new water hookups violated their rights under federal law, including the Substantive Due Process Clause. The district court ruled against the plaintiffs, but this Court reversed. Discussing the due process analysis, the Court explained that "the rational relation test will not sustain conduct by state officials that is malicious, irrational or plainly arbitrary." *Id.* at 1155. And it concluded that, "[a]lthough a water moratorium may be rationally related to a legitimate state interest in controlling a water shortage," in the abstract, the plaintiffs had "raised triable issues of fact surrounding the very existence of a water shortage." *Id.* It reversed and remanded so that they "may have an opportunity to prove that [the government's] conduct was arbitrary or malicious." *Id.* at 1156. Appellants deserve the same opportunity.

There is no merit to Appellees' argument that the Court can set these precedents aside, and simply rubber-stamp LAUSD's COVID vaccine policy without any discovery or an evidentiary hearing, because this case involves a vaccine. This Court has never adopted such a rigid approach to substantive due process cases. It

government's request, while the case was on appeal. *Dixon v. DeBlasio*, No. 21-2666, 2022 WL 961191, at *1 (2d Cir. Mar. 28, 2022). Appellees did not mention that.

should not do so now, especially with respect to the controversial subject of vaccines.

The Supreme Court's decision in *Bruesewitz v. Wyeth, LLC*, 562 U.S. 223 (2011), which held that the federal National Childhood Vaccine Injury Act preempts all design-defect claims against vaccine manufacturers, left "a regulatory vacuum in which no one ensures that vaccine manufacturers adequately take account of scientific and technological advancements when designing or distributing their products." *Id.* at 250 (Sotomayor and Ginsburg, JJ., dissenting). That is one reason people declined to take the COVID shots. ER 022. Others had other reasons. ER 021-022. Either way, they have the right to gather evidence and prove that Appellees acted arbitrarily when they ordered LAUSD employees to put something they did not want into their body, under threat of termination.

Appellees believe they acted rationally, of course. And they may eventually be able to prove that. But, under the Court's balancing test, Appellants must have a fair opportunity to gather evidence and present their case to the finder of fact. They did not get that chance below, so the judgment should be reversed. *See Witt*, 527 F.3d at 821 (concluding that remand was "required for the district court to develop the record on Major Witt's substantive due process claim").

Finally, there is no merit to Appellees' argument that they cannot be sued under section 1983 because they are not "persons" as defined by that statute. This

Court has made clear "that state officials are 'persons' under § 1983 when sued for prospective injunctive relief." *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022). As explained below, that is precisely the type of relief sought here.

**B.** **The Rational Basis-Plus Test Used to Decide Equal Protection Cases Brought by Politically Unpopular Groups Also Requires the Development of a Factual Record.**

At minimum, the Court should vacate the judgment of dismissal and remand this case for further litigation on Appellants' substantive due process claim. It should also vacate the District Court's dismissal of Appellants' equal protection claim and it should clarify the standard that applies when an equal protection case is brought by members of a politically unpopular group.

Appellants concede that the rational basis test governs this analysis. Thus, Appellees' characterization of this claim as alleging that "vaccination status is a suspect classification warranting strict scrutiny analysis" (Appellees' Br., at 40) is false. The question is what type of analysis the rational basis test involves when the government classifies people not based on a suspect class but in a way that discriminates against a politically unpopular group. Appellees argue that there is no distinction. They argue that courts analyze such classifications the same way they classify all classifications that do not involve a suspect class. They are wrong.

The Supreme Court explained in *Romer v. Evans*, 517 U.S. 620, 635 (1996), that "a classification of persons undertaken for its own sake" is "something the

Equal Protection Clause does not permit." Thus, "even in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained." *Id.* at 632. This inquiry "gives substance to the Equal Protection Clause …." *Id.* It also prevents the government from taking any action against any group of people (suspect class or not) because of animosity toward them. That is a cornerstone of the Fourteenth Amendment. Indeed, "if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare … desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973); *see also Cleburne v. Cleburne Living Center*, 473 U.S. 432, 448 (1985) (holding that "mere negative attitudes … are not permissible bases" to classify people under Equal Protection Clause).

Of course, the government rarely announces its intention to punish a politically unpopular group. So, in these situations, courts must look carefully to determine whether the government's classification really serves the interest it claims. The Supreme Court did that in *Romer* when it invalidated a state constitutional amendment that prohibited all government action designed to protect homosexuals from discrimination under rational basis review. *Romer*, 517 U.S. at 635-36. That is what Judge Jeffrey White did in *Golinski v. United States Office of*

19

*Personnel Management*, 824 F. Supp. 2d 968, 996-99 (N.D. Cal. 2012), when he concluded that Congress's stated justifications for passing the Defense of Marriage Act bore "no rational relationship to the classification which burdens same-sex married couples." And it is what this Court did when it invalidated California's constitutional amendment that restricted marriage to opposite-sex couples. *Perry v. Brown*, 671 F.3d 1052, 1086-95 (9th Cir. 2012).

The Supreme Court vacated the judgment in *Perry* on standing grounds, as a new governor refused to enforce the amendment in question, *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013), but it did not disapprove of the Court's equal protection analysis. Nor could it. The analysis had a solid foundation in this Court's, and the Supreme Court's, equal protection jurisprudence.

Appellees ignored these principles. They did not discuss *Romer* at all. They cited generic equal protection cases that did not consider the question presented here, about what the rational basis analysis requires when the plaintiffs allege that the government singled them out arbitrarily, to punish them, because they belong to a politically unpopular group. Cases are "not precedential for propositions not considered" in them. *United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018). Meanwhile, as explained above, Appellees' suggestion that such classifications can *never* violate the Equal Protection Clause is clearly contrary to law. "Although it is difficult to show that a law violates the equal protection clause under rational basis

review, it is not impossible, since some laws are so irrational or absurd on their face it is clear they can be motivated by nothing other than animus or prejudice against a group." *Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1185-86 (9th Cir.), opinion amended and superseded on denial of reh'g, 379 F.3d 531 (9th Cir. 2004).

Appellees also again overlooked the procedural posture of this case. The District Court decided the case on the pleadings, without any presentation of evidence, much less an evidentiary hearing. By contrast, *Romer* involved multiple evidentiary hearings in a state court, 517 U.S. at 625-26 (describing them), while *Perry* arose out of "a twelve-day bench trial, during which [the trial court] heard testimony from nineteen witnesses and, after giving the parties a full and fair opportunity to present evidence and argument, built an extensive evidentiary record" that allowed it to issue a lengthy opinion with eighty findings of fact, *Perry*, 671 F.3d at 1069. That is the only way a party can meet its burden in a case like this.

Of course, that does not mean that every equal protection case should survive a pleading challenge. Fortunately, "laws singling out a certain class of citizens for disfavored legal status or general hardships are rare." *Romer*, 517 U.S. at 633. But the COVID pandemic unleashed them. Nor is it sufficient for Appellees to argue, as they often do, that they are not really discriminating against Appellants

21

for being unvaccinated. They just can't work for LAUSD, something they had no constitutional right to do in the first place. "Under *Romer*, it is no justification for taking something away to say there was no need to provide it in the first place; instead, there must be some legitimate reason for the act of taking it away, a reason that overcomes the 'inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected.'" *Perry*, 671 F.3d at 1088 (quoting *Romer*, 517 U.S. at 634).

In any event, this analysis involves disputed questions of fact that must be resolved at an evidentiary hearing, based on evidence, not lawyers' speculation. The Court should reverse and remand the decision to provide Appellants with that opportunity.

## C. The Eleventh Amendment Does Not Bar This Case.

Finally, there is no merit to Appellees' argument that the Eleventh Amendment bars this case.[4]

As explained above, "state officials are 'persons' under § 1983 when sued for prospective injunctive relief." *Cornel,* 37 F.4th at 531. This rule, recognized by *Ex parte Young*, 209 U.S. 123 (1908), applies when the plaintiff "alleges an ongoing violation of federal law, and where the relief sought is prospective rather

---

[4] The District Court "decline[d] to dismiss the SAC on the basis of Eleventh Amendment immunity." ER 089. Appellees did not file a protective cross-appeal to challenge that decision.

than retrospective." *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (quotations omitted). Thus, under settled law, "the Eleventh Amendment generally does not bar suits for prospective, non-monetary relief against state officers …." *N.E. Med. Servs., Inc. v. Cal. Dep't of Health Care Servs. Agency,* 712 F.3d 461, 466 (9th Cir. 2013).

Appellees tried to get around the *Ex parte Young* rule by arguing that any decision in Appellants' favor would necessarily result in retrospective, monetary relief because it would establish that LAUSD violated the law when it fired Appellants from their jobs. "This argument confuses liability with remedy." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). The Court rejected it in *Porter* because, while "Plaintiffs' allegations are rooted in events that occurred in the past, the injunctive and declaratory relief that they seek would prevent future and ongoing illegality." *Id.* Of course, "a plaintiff may not couch in terms of injunctive and declaratory relief a compensatory, backward-looking remedy that would be otherwise barred by the Eleventh Amendment, such as damages or quiet title remedy." *Id.* at 491 n.7. But this does not preclude a federal court from exercising judicial review in a case like this.

For example, in one case, the district court, in addition to issuing an injunction prohibiting future violations of federal law, "issued a second injunction ordering the defendants to release and remit all [government] benefits that they had

wrongfully withheld on account of their past violations of federal law." *Green v. Mansour*, 474 U.S. 64, 69 (1985). The Supreme Court "reversed, holding that the Eleventh Amendment barred the injunction ordering retroactive benefits because it was effectively an award of money damages for past violations of federal law." *Id.* at 69-70 (citing *Edelman v. Jordan*, 415 U.S. 651, 666-69 (1974)). Thus, the second injunction went too far. But the Supreme Court agreed with the Eleventh Circuit that, on remand, the district court could require that state officials send "a mere explanatory notice to applicants advising them that there is a state administrative procedure available if they desire to have the state determine whether or not they may be eligible for past benefits." *Jordan v. Trainor*, 563 F.2d 873, 875 (CA7 1977) (en banc). That fell "on the *Ex parte Young* side of the Eleventh Amendment line" because it was "ancillary to the prospective relief already ordered by the court" and not an independent form of retroactive relief. *Quern v. Jordan*, 440 U.S. 332, 347-49 (1979).

This case is not even that difficult. Appellants are not seeking an order that LAUSD wrongfully terminated their employment. They sued to declare LAUSD's COVID-19 vaccine policy unlawful under federal law. They sought to enjoin further enforcement of the policy. Whether Appellants eventually pursue some other type of relief, in some other case, is irrelevant. The federal courts have jurisdiction over the federal questions raised, and the power to decide them.

24

### D.     This Is Not a Merits Proceeding.

Appellees submitted Supplemental Excerpts of Record which include materials that Appellees asked the District Court to take judicial notice of when it considered their motion for judgment on the pleading. The court took "judicial notice of the *existence* of the documents, not the truth of the allegations or the merits of the arguments asserted in those documents, or the parties' characterization of those documents." ER 093.

That was the correct ruling because Appellants disputed the facts discussed in those documents, including statements about COVID-19 that had been undermined, if not proven false, by the time LAUSD tried to force the COVID shots on its employees. ER 004-007, 011-020. But the District Court did not follow through on its ruling. Instead, it ignored *all* facts, believing that, under *Jacobson*, when a government agency cites "public health" to support a mandatory vaccination policy, it wins.

That is not the law, not under the balancing test that this Court has applied for decades in substantive due process cases that involve people's interest in their bodily autonomy. This law should not change simply because there is a pandemic and because the government says it wanted to keep people safe. "'They that can give up essential liberty to obtain a little safety deserve neither liberty nor safety.'" *United States v. Kincaide*, 379 F.3d 813, 842 (9th Cir. 2004) (en banc) (Reinhardt,

Pregerson, Kozinski and Wardlaw, JJ., dissenting) (quoting B. Franklin, *Historical Review of Pennsylvania* (1759)).

Those words should echo in the Court's mind now. It is time to correct the errors that many lower courts have made during the COVID pandemic. It is time to clarify that the substantive due process balancing test is a factual one, one which, at least in cases involving bodily autonomy, cannot be decided on the pleadings but which require the development of a factual record and an evidentiary hearing. That will allow this important case to be decided on its merits and will provide guidance for similar cases.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's judgment and remand the case for further proceedings.

Date: May 26, 2023

> JW HOWARD/ATTORNEYS, LTD.
>
> */s/ Scott J. Street*
> Scott J. Street
> *Attorneys for Appellants Health Freedom
> Defense Fund et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 22-55908**

I am the attorney or self-represented party.

**This brief contains 4,678 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Scott J. Street*　　　　　**Date:** May 26, 2023

27

## <u>CERTIFICATE OF SERVICE</u>

***Health Freedom Defense, et al.  v. Megan K. Reilly, et al.***
**U.S. COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
**Case No. 22-55908**

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On May 26, 2023, I caused the **APPELLANTS' REPLY BRIEF** to be filed and served via the Court's Electronic Service upon the parties listed on the Court's service list for this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 26, 2023 at San Diego, California.

*/s/ Dayna Dang*
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com