**No. 22-55908**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

Health Freedom Defense Fund *et al.*,

*Plaintiffs-Appellants*,

v.

Megan K. Reilly *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-08688-DSF-PV
Hon. Dale S. Fischer

_____

**OPPOSITION TO APPELLEES' POST-ARGUMENT MOTION TO
DISMISS APPEAL; DECLARATIONS OF JOHN W. HOWARD AND
SCOTT J. STREET**

_____

John W. Howard (Cal. Bar No. 80200)
Scott J. Street (Cal. Bar No. 258962)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: 619-234-284
Email:
johnh@jwhowardattorneys.com
sstreet@jwhowardattorneys.com

*Attorneys for Appellants Health Freedom
Defense Fund et al.*

i

## OPPOSITION TO MOTION TO DISMISS APPEAL

Appellants Health Freedom Defense Fund *et al.* oppose the motion to dismiss this appeal that was filed, after oral argument, by Appellees representing the Los Angeles Unified School District ("LAUSD"). Appellees filed the motion after LAUSD hastily voted to rescind its mandatory COVID-19 vaccination policy for district employees—a policy that, during oral argument, the district's lawyer said LAUSD had no intention of rescinding and could keep in place for as long as it wanted without being subject to meaningful judicial review.

***The voluntary cessation doctrine.*** This is a quintessential example of a defendant voluntarily ceasing its conduct to avoid an adverse judicial decision. But, under established law, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does *not* make the case moot." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (emphasis added). Indeed, the Supreme Court has held that the voluntary cessation doctrine *prohibits* a finding of mootness unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotations omitted).

That is a high standard, and the party trying to meet it bears a "formidable burden" to show it. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). For

example, in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that the Governor of Missouri's decision to let religious organizations compete for state grants on the same terms as secular organizations, after previously prohibiting it, did not meet the State's "'heavy burden' of making 'absolutely clear' that it could not revert to its policy of excluding religious organizations." Similarly, in *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307 (2012), the Supreme Court found that the case was not moot, despite the SEIU's voluntary cessation of challenged conduct, "since the union continues to defend the legality of the Political Fight-Back fee …."

Appellees have not come close to meeting their heavy burden. How could they? LAUSD continues to defend the legality of its vaccine policy, with LAUSD board president Jackie Goldberg saying she did "not regret what we did for one moment, not 30 seconds, not one tiny bit." Declaration of Scott J. Street dated Oct. 31, 2023 ("Street Decl."), Exh. A. The order repealing the policy echoes that statement. It repeats the contention that led to the filing of this case and which is still the focus of Appellants' claims for declaratory and injunctive relief: LAUSD's belief that "[t]he science has not changed. Vaccines are safe and effective." *Id.*, Exh. B (p. 178). And it insists that LAUSD officials "will continue monitoring the state of COVID-19 and other viruses. Should health conditions necessitate a

3

revisiting of the COVID-19 vaccination requirement, the District will evaluate and bring any recommendation to the Board for consideration." *Id.* (p. 179-80).

That is not the type of definitive change that courts have found to moot an appeal. Furthermore, it appears that LAUSD rescinded the vaccine policy not in response to real-world changes but in response to statements this Court made during oral argument, including its "shock" that LAUSD was still enforcing the policy. After all, the argument occurred on September 14, 2023. ECF 40. LAUSD voted to rescind the vaccine policy just twelve days later.

If there were any doubt about that (and there shouldn't be), immediately following the argument, Appellees' counsel turned to Appellants' counsel and said: "What are you going to do when we rescind the mandate?" Declaration of John W. Howard dated Oct. 31, 2023 ("Howard Decl."), ¶ 3.

The Court should not sanction this blatant attempt to avoid an adverse judicial decision. Courts have described the defendant's "self-interest" in ceasing challenged conduct as "highly influential" in the mootness analysis. *Murphy v. Benson*, 270 F.2d 419, 421 (2d Cir. 1959). They have also focused on the timing of the defendant's cessation of activity, noting that "maneuvers designed to insulate a decision from review … must be viewed with a critical eye." *Knox*, 567 U.S. at 307.

For example, in *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020), as revised (Oct. 30, 2020), the Fifth Circuit refused to dismiss a case as moot because "the University did not commence review, much less change its policies, until after the district court decision [that was being appealed]." It also noted that the school did not "explain the expedient timing" of its change. *Id.* (quotations omitted). Similarly, in *Rich v. Secretary, Florida Department of Corrections*, 716 F.3d 525, 532 (11th Cir. 2013), the Eleventh Circuit refused to dismiss an appeal as moot where the state's "policy change" was made "'late in the game.'" It also emphasized that "Florida continues to press on appeal that the voluntarily ceased conduct should be declared constitutional and has never promised not to resume the prior practice." *Id.* (cleaned up and quotations omitted); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 284-86 (5th Cir. 2012) (holding that change of government policy "the night before oral argument" did not moot case).

The same reasoning applies here. LAUSD has never admitted its error. It continues to defend its mandatory vaccine policy and, as its counsel stated at oral argument, believes it could impose such a policy again. That weighs against dismissing the appeal as moot. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (refusing to find case moot in part because "district vigorously defends the constitutionality of its race-based program").

5

Moreover, this is not the type of case where a legislature changed the law to prevent the plaintiff from being harmed again. "Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). In other situations, like the one here, the governmental body must at least "represent that it would not return to the challenged policies." *Id.* And when it acts in response to developments in litigation, that "increases [its] burden to prove that its change is genuine." *Id.*

The school did not meet that heavy burden in *Schlissel*. Neither did Appellees. Their motion relies heavily on other COVID-19 cases that courts have found to be moot, including *Health Freedom Defense Fund v. President of the United States*, 71 F.4th 888 (11th Cir. 2023) ("*HFDF*"), and *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 677 (5th Cir. 2023) ("*SEALs*"), but those cases are plainly distinguishable. In fact, in *SEALs*, the Fifth Circuit emphasized that "Congress [had] ordered the military branches to rescind their mandates. The Navy complied with that directive and then went above and beyond it—rescinding all the challenged policies and formally announcing that COVID-19 vaccines would not be imposed on any servicemember." 72 F.4th at 669; *see also id.* at 673 (noting that at least "three binding policies now forbid considering vaccination status" for

6

deployment, training, and assignments). Similarly, in *HFDF*, the president's declaration of the end of the COVID-19 emergency reassured the Eleventh Circuit that the executive branch would not reinstitute mask mandates for travel. 71 F.4th at 892-93. LAUSD has not taken such definitive legal action.

Moreover, the government rescinded the challenged policies in *HFDF* and *SEALs* after it lost in court. That was critical, especially in the Fifth Circuit's analysis of the vaccine policies in *SEALs*. 72 F.4th at 672 (noting that "Plaintiffs, both individually and as a class, have now received everything those injunctions [issued by the district court] required"). By contrast, Appellees kept their vaccine policy in place, and defended it against challenge, through oral argument. They even sought to recover more than $210,000 in legal fees as sanctions, during this appeal, to punish Appellants for bringing what they argued were "frivolous" claims. Dist. Ct. ECF 94. No doubt they still believe that. They only rescinded the policy in response to tough questions from this Court and to avoid an adverse judicial decision that would make it harder for them to impose such policies in the future. That is not proper. And it would deprive the Court of the opportunity to clarify the standard that governs autonomy-based challenges to mandatory vaccination policies, reconciling *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), with *Cruzan v. Director of Missouri Department of Health*, 497 U.S. 261 (1990), and other bodily autonomy cases decided by this Court.

*Litigation posturing.* Of course, some courts allow the government to "bear a lighter burden … in proving that the challenged conduct will not recur," but they do so "because we presume that state actors, as public representatives, act in good faith." *Freedom From Religion Found. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quotations omitted); *cf. Brach v. Newsom*, 38 F.4th 6, 13-14 (9th Cir. 2022) (finding challenge to COVID-related shutdown of in-person school instruction to be moot because California had "unequivocally renounce[d] the use of school closure orders in the future" and shown commitment to that policy over time). Actions that constitute "litigation posturing" do not count. *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018).

Compelling evidence of litigation posturing exists here, especially given the timing of LAUSD's vote and the comment that Appellees' counsel made to Appellant's counsel immediately after the oral argument. Howard Decl., ¶ 3. But that is not all. In fact, LAUSD has engaged in litigation posturing throughout these proceedings. LAUSD issued its initial vaccine policy on March 4, 2021. ER 003. That prompted Appellants to file a lawsuit challenging the policy (the "First LAUSD Case"). *Id.* In response, LAUSD diluted—indeed, it effectively rescinded—the first policy by giving employees who did not want to get the shot the option of regular testing. ER 003-004. LAUSD then convinced the District Court to dismiss the First LAUSD Case based on the ripeness doctrine. *Id.*

8

Seventeen days later, LAUSD adopted a new policy that required all employees to get the COVID-19 shot to keep their jobs. ER 004. That is the policy that this case challenged.

Thus, this is the *second* time LAUSD has rescinded a vaccine policy to avoid judicial review. It reinstituted the policy the first time. There is no reason to think it won't do so again, especially given its history of duplicitous conduct, which included convincing the District Court to dismiss the First LAUSD Case as not ripe while the district's interim superintendent was directing school officials to write a new policy that would take effect after the dismissal. Dist. Ct. ECF 100 at 7.[1]

Furthermore, the second vaccine policy led to the Individual Appellants being denied accommodation for religious and medical reasons and terminated them from employment. ER 021-022. Appellees say those people have been invited to apply for reinstatement, but LAUSD has not rehired them yet. The Individual Plaintiffs would be entitled to such relief (reinstatement) if they prevail in this case.

Finally, if LAUSD had rescinded its vaccine policy after Appellants received a favorable decision from this Court—to avoid discovery and a trial on the merits

---

[1] Appellants presented this evidence was presented to the District Court when LAUSD sought to recover more than $210,00 in costs and legal fees as sanctions because it claimed Appellants' claims were frivolous. Dist. Ct. ECF 94. The District Court denied LAUSD's motion in a one-sentence order. Dist. Ct. ECF 103.

in the District Court—Appellants would have sought to recover their legal fees under 42 U.S.C. § 1988. *See Ward v. San Diego Cnty.*, 791 F.2d 1329, 1334 (9th Cir. 1986) ("A party can achieve 'prevailing party' status by establishing a clear, causal relationship between the litigation brought and the practical outcome realized." (quotations omitted)). Appellees should not be allowed to avoid a fee award by belatedly rescinding the challenged policy.

Therefore, the Court should deny Appellees' motion to dismiss the appeal. If the Court believes the case is moot, it should vacate the District Court's decision pursuant to *United States v. Munsingwear*, 340 U.S. 36, 39 (1950). *See In re Burrell*, 415 F.3d 994, 1000 (9th Cir. 2005) (ordering vacatur when "the appeal has become moot through no act of the party seeking relief" on appeal). And it should order Appellees to pay at least a portion of the costs and legal fees Appellants incurred for an appeal that should not have been necessary and which led a reluctant school district to abandon its policy and to finally start rehiring the people it fired under it. Respectfully submitted,

Date: November 1, 2023

JW HOWARD/ATTORNEYS, LTD.

*/s/ Scott J. Street*
Scott J. Street
*Attorneys for Appellants Health Freedom
Defense Fund et al.*

10

## DECLARATION OF SCOTT J. STREET

I, Scott J. Street, declare as follows:

1.     I am an attorney duly licensed to practice before all courts in the state of California and before this Court. I am a partner with the law firm JW Howard/Attorneys, Ltd., counsel of record to Appellants Health Freedom Defense Fund *et al.* ("Appellants") in this action. I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called to do so.

2.     On September 26, 2023, the Los Angeles Unified School District ("LAUSD") voted to rescind the mandatory COVID-19 vaccination policy that it issued during the fall of 2021, and which Appellants sued to enjoin in this action. A true and correct copy of a news article that reported on the vote is attached as **Exhibit "A."**

3.     Attached to this declaration as **Exhibit "B"** is a true and correct copy of the agenda from LAUSD's September 26 meeting, along with the signed rescission of the vaccine policy, which I obtained from LAUSD's website. Given the size (980 pages), we omitted the agenda's other exhibits, but the full agenda and exhibits are publicly available on the LAUSD web site.

4.     I was primarily responsible for drafting the briefs in this appeal. At no time did Appellees' counsel suggest that the appeal was moot. Nor did they indicate that LAUSD was considering rescinding its mandatory vaccination policy.

To the contrary, LAUSD appears to have rescinded the vaccine policy only after the oral argument that occurred on September 14, 2023.

Under penalty of perjury, under the laws of the United States of America, I declare that the foregoing is true and correct. Executed this 31st day of October 2023 at Pasadena, California.

Scott J. Street

# EXHIBIT A



Sign in to dailybreeze.com with Google    ✕

**S**  Scott Street
sjstreet25@gmail.com

Continue as Scott

To create your account, Google will share your name, email address, and profile picture with dailybreeze.com. See dailybreeze.com's privacy policy and terms of service.

NEWS • News

# Los Angeles Unified School District mandate for staff

The mandate was hit by lawsuits, but Sup. Carvalho says the decision is due to science and conditions



Laura Gama, of Bell, a parent of an eleventh-grader, joins a rally opposing LAUSD's student vaccine mandate outside the district office in Los Angeles while the school board meets on enforcement of the mandate on Tuesday, December 14, 2021. (Photo by Sarah Reingewirtz, Los Angeles Daily News/SCNG)



By **CLARA HARTER** | charter@scng.com

PUBLISHED: September 26, 2023 at 4:08 p.m. | UPDATED: September 26, 2023 at 4:32 p.m.

The Los Angeles Unified School District Board of Education voted 6 to 1 on Tuesday to rescind its two-year-old COVID-19 vaccine mandate



FALL SALE    ONLY $1 FOR 6 MONTHS    Hurry, this offer ends soon    SAVE NOW    ✕

The COVID mandate went into effect on Oct. 1, 2021 and over time led to the termination of more than 600 employees who refused the vaccine and did not qualify for medical or religious exemptions.

Staff who were placed on unpaid leave because they refused to follow the mandate may be invited to return under the conditions of their leaves. Staff who departed the district or were reassigned to a virtual classroom are eligible to apply for an in-person position.

At the time the mandate was enacted, many praised the bold action to protect students and staff from the spread of the virus, and some 97% of employees met the deadline for getting vaccines.

"I do not regret what we did for one moment, not 30 seconds, not one tiny bit" said Board President Jackie Goldberg during Tuesday's meeting. "The highest death rates in the country were in states where there were no vaccine requirements."



LAUSD Board President Jackie Goldberg speaks during a ceremony at BMO Stadium in Los Angeles on Monday, May 22, 2023, honoring LAUSD high school seniors who have experienced homelessness or housing insecurity who will be graduating. (Photo by Hans Gutknecht, Los Angeles Daily News/SCNG)

But some staff and community members saw the mandate as an attack on people's medical freedom and were outraged by the ultimatum that staff either get vaccinated or lose their jobs.

Several former employees and activist organizations filed lawsuits against the district seeking to repeal the vaccine requirement.

The LAUSD board's resolution to rescind the measure does not refer to any legal action, and instead points to the winding down of city, state and federal emergency health declarations and to COVID-19's transition to an endemic disease that is here to stay but no longer a pandemic.

"This was a necessary requirement and it was adopted so that schools could reopen safely based on information that was known then, verified then," said LAUSD Superintendent Alberto Carvalho. "COVID-19 is now in an endemic phase. It has entered the state of stability and increased predictability that comes usually with other viruses such as RSV and the flu."

"Today, I am recommending before this board the rescission of the LAUSD vaccination requirement," he said. "It is a decision based on scientific knowledge and current conditions, nothing more, nothing less."

Nevertheless, parties involved in legal battles against the district see the board's decision as a big win.

"This is a huge victory," said Leslie Manookian, founder of the Health Freedom Defense Fund, which alongside the California Educators for Medical Freedom, and six LAUSD employees filed a lawsuit against the district's mandate in October 2021. The lawsuit is pending in the Ninth Circuit Court of Appeals.

FALL SALE    ONLY $1 FOR 6 MONTHS
Hurry, this offer ends soon                    SAVE NOW
✕

In a separate lawsuit, more than 20 former school police officers allege that they were improperly terminated after filing for religious exemptions to reject the mandate. In the complaint, the former employees asked for compensatory damages, and to repeal the mandate.

Francis Calderon, a former early learning teacher at Willow Elementary School who refused the vaccine, said she was excited that the board was considering repealing the mandate.

Calderon was reassigned to an online classroom in fall 2021 and then terminated at the end of the academic year after working for LAUSD for 15 years.

"It was a very horrible experience," she said. "It was hard on me and for my family, the gap in my income went on for several months."

Calderon was part of a group of current and former employees who staged a protest outside LAUSD's district headquarters in April 2022 demanding to be allowed back in the classroom. They were responding to Superintendent Alberto Carvalho's plan to address teacher vacancies by assigning about 400 employees – some lacking teaching credentials – to classrooms.

Now, more than a year later, Calderon has a job in another school district and is not sure she wants her former position back.

"I really feel like I was discriminated against not just by the district, but also by colleagues who were very mean to us (unvaccinated employees)," Calderon said. "I don't feel like I'm excited like 'oh my god we can go back,' because we've been through a lot."

⊤ The Trust Project ⌄

**Nature's 'Liquid Adderal' is going viral in Brea**
(Try Without Prescription)
Health Headlines | Sponsored                                    Try Now

**She Was The Dream Girl In The 80s, This Is Her Now.**
Poshland | Sponsored

**No More Free Returns? Amazon Releases New Fees**
Americans, you'll want to check this out ASAP
Online Shopping Tools | Sponsored

**These May Be the Coziest Slippers In Existence**
Need a pair of swoon-worthy slippers this year? Bombas has them all, from ultra-pillowy pairs to something a little lighter you can wear year-round. Best of all, every purchase gives essential clothing to someone who needs it.
Bombas | Sponsored

**NerdWallet: Credit Cards That Can Grow Your Credit Score**
Growing your credit score can save you thousands in the long run.
NerdWallet | Sponsored                                    Learn More

**Vanguard vs. Fidelity vs. Schwab**
SmartAsset | Sponsored                                    Learn More

**Ed Sullivan's Arch-Nemesis: The Singer He Despised**

FALL SALE        ONLY $1 FOR 6 MONTHS              SAVE NOW
                 Hurry, this offer ends soon

Israel releases 'hostage manual' found on bodies of Hamas fighters which instructs the gunmen to 'kill the problematic' to create chaos as well as 'violence and terrorism'

**War in Israel** | Sponsored

[Learn More]

### Delaware Statutory Trust Pros & Cons (#4 May Surprise You)

Thinking of selling your investment property? Check the pros and cons of DSTs before locking in your 1031 exchange. Read more about your options.

**Kay Properties and Investments** | Sponsored

[Learn More]

### Animal Activist Katherine Heigl: Don't Feed Your Dog These Foods

Katherine has spent years working with dogs and learning about their health. And what she's discovered...

**Badlands Ranch** | Sponsored

[Watch Now]

### Looking for a Mortgage? Compare Friday's Rates Before Fed Meets

**NerdWallet** | Sponsored

[Learn More]

### Forrest Gump Has Iconic Scene Flaw No One Noticed

No matter how many times you've seen the movie, this ridiculous flaw has gone unnoticed, and it changes everything...

**MyDailyMagazine** | Sponsored

[Read More]

### Doctors' Picks: Top 10 Most Accurate Blood Pressure Monitors of 2023

Accuracy affirmed: researchers unveil their top blood pressure monitor picks after exhaustive testing of 2023's popular models

**DocReviews** | Sponsored

[Read More]

2023 > September > 26

SPONSORED CONTENT



**Think Twice Before Buying KCups from The Store (The Ugly Truth)** ↗

By Angelino's Coffee

Are you a fan of KCups? Read this before purchasing from a Store- the ugly truth may make you think twice. American...

FALL SALE    **ONLY $1 FOR 6 MONTHS**   Hurry, this offer ends soon     SAVE NOW ✕

**EXHIBIT B**

## BOARD OF EDUCATION OF THE CITY OF LOS ANGELES
### Governing Board of the Los Angeles Unified School District

## REGULAR MEETING ORDER OF BUSINESS
333 South Beaudry Avenue, Board Room
1:00 p.m., Tuesday, September 26, 2023

**Roll Call**

**Pledge of Allegiance**

**Board President's Reports**

Recognition of Kathryn L. Kurka
Labor Partners
Committee Chair Reports
- Committee of the Whole
- Greening Schools and Climate Resilience
- Safety and School Climate

**Consent Items**

Items for action are assigned by the Board at the meeting to be adopted by a single vote. Any item may be pulled off of the consent calendar for further discussion by any Board Member at any time before action is taken.

**Superintendent's Reports**

**General Public Comment (Approximately 4:00 P.M.)**

Providing Public Comment
The Board of Education encourages public comment on the items for action on this Regular Board Meeting agenda and all other items related to the District. Any individual wishing to address the Board must register to speak using the Speaker Sign Up website: https://boardmeeting.lausd.net/speakers, and indicate whether comments will be provided over the phone or in person. Registration will open 24 hours before the meeting. Each action item will allow for seven (7) speakers, except those items for which a Public Hearing will be held will allow for 12 speakers, and 15 speakers may sign up for general Public Comment.

Public comment can be made in-person or by telephone, and members of the public must sign up on-line for either method, as described above. Members of the public can only make remote public comment by calling 1-888-475-4499 (Toll Free) and entering the Meeting ID: **879 7060 8197**.

**2**

Each speaker will be allowed a single opportunity to provide comments to the Board, with the exception of public hearings, and shall be given three minutes for their remarks. **Speakers signed up to speak on an agenda item must constrain their remarks specifically to the item or items on the agenda or may be ruled out of order.**

Speakers addressing items not on the agenda will be heard at approximately 4:00 p.m. Speakers commenting on items on the consent calendar will be heard prior to the Board's consideration of the items, and speakers on items not on the consent calendar will be heard when the item is before the Board.

Speakers who do not register online to provide comments may use the following alternative methods to provide comments to Board Members:

- Email all Board Members at boardmembers@lausd.net;
- Mail comments via US Mail to 333 S. Beaudry Ave., Los Angeles, CA 90017; and
- Leave a voicemail message at 213-443-4472, or fax 213-241-8953. Communications received by 5 p.m. the day before the meeting will be distributed to all Board Members.

Speakers who have registered to provide public comments <u>over the phone</u> need to follow these instructions:

1. Call 1-888-475-4499 (Toll Free) and enter Meeting ID: **879 7060 8197** at the beginning of the meeting.
2. Press #, and then # again when prompted for the Participant ID.
3. Remain on hold until it is your turn to speak.
4. Call in from the same phone number entered on the Speaker Sign Up website. If you call from a private or blocked phone number, we will be unable to identify you.
5. When you receive the signal that your phone has been removed from hold and or unmuted, please press *6 (Star 6) to be brought into the meeting.

Please contact the Board Secretariat at 213-241-7002 if you have any questions.

The Office of the Inspector General would like to remind you that they investigate the misuse of LAUSD funds and resources as well as retaliation for reporting any misconduct. Anyone can make a report via the OIG hotline on their website (https://www.lausd.org/oig), by telephone at 213-241-7778, or by emailing inspector.general@lausd.net. Reports are confidential and you can remain anonymous if you wish.

<u>Attending the Meeting</u>
Please note there are three ways members of the public may watch or listen this to Regular Board Meeting: (1) online (Granicus stream or join the zoom webinar) (2) by telephone by calling 1-888-475-4499 (Toll Free) and entering the Meeting ID: **879 7060 8197**, or (3) in person.

**New Business for Action**

1. Board of Education Report No. 050 – 23/24
   Accounting and Disbursement Division
   (Unaudited Actuals Report for Fiscal Year 2022-23; Gann Limit Resolution - Public Hearing; and Closure of the State School Building Lease-Purchase Fund) Recommends approval of the Unaudited Actuals Report for Fiscal Year 2022-23 (Attachment A) and directs staff to submit the Report to the County Superintendent of Schools as required by Ed Code; adoption of the Gann Limit Resolution as required under Ed Code Section 42132 (Attachment B); approval of the board resolution for the closure of State School Building Lease-Purchase (SSBLP) Fund 300-7710 (Attachment C); and, approval of the enclosed Resolution to Commit Fund Balance for specific use of programs that meet various obligations and compensation (Attachment D).

2. Board of Education Report No. 054 – 23/24
   Human Resources Division
   (Approval of Routine Personnel Actions) Recommends approval of 6,841 routine personnel actions (including, but not limited to, elections, promotions, transfers, leaves, terminations, etc.)

3. Board of Education Report No. 061 – 23/24
   Human Resources Division
   (Provisional Internship Permits) Recommends approval of the continuing employment of 46 teachers under the Provisional Internship Permit requirements, allowing the District to continue to staff subject field shortage classrooms.

4. Board of Education Report No. 051 – 23/24
   Office of the Superintendent
   (Rescission of the LAUSD Vaccination Requirement) Recommends authorization of the rescission of the Los Angeles Unified School District's COVID-19 vaccination requirement.

5. Board of Education Report No. 052 – 23/24
   Beyond the Bell
   Division of Instruction
   (Tobacco-Use Prevention Education (TUPE) Tier 2 from the California Department of Education (CDE)) Recommends approval to accept TUPE Tier 2 Grant from the CDE in the amount of $1,786,028 for the 2023-24 school year, for an estimated total of $5,358,084 over a three-year period.

**Board Member Resolutions for Action**

6. Ms. Goldberg, Dr. Rivas- Creating a Charter Schools Co-Location Policy to Mitigate Impacts Caused by Proposition 39 (Res-026-22/23) (Noticed June 13, 2023) **3:15 P.M. TIME CERTAIN**

   Whereas, ~~The Los Angeles Unified School District does not have a clear, comprehensive, and transparent policy on how Proposition 39 should be implemented in order to minimize the harm that charter co-locations cause district schools, and it~~ It is the responsibility of the Governing Board of the Los Angeles Unified School District to ensure the best possible learning environment for our students, which includes a commitment to continuous evaluation and improvement of existing practices, policies, and procedures, including those relating to the District's Proposition 39 compliance efforts and resulting impacts caused by co-locations;

Whereas, The co-location of charter schools, ~~as required by~~ pursuant to Proposition 39, is ~~often~~ detrimental to District schools and the students they educate, and has a tangible negative impact on the District's ability to maintain and grow important priorities including, but not limited to, Black Student Achievement Program (BSAP), Priority Schools, and Community Schools; now, therefore, be it

~~Whereas, Efforts to support such important priorities, mitigate impacts, and focus on student success throughout the District's comprehensive Proposition 39 space matching process currently include a wide range of considerations, as well as valuable input from important participants and stakeholders, including, but not limited to, District and Region Office leadership, Charter Schools Division and Facilities Services Division staff, school-site staff, and labor partners (including United Teachers Los Angeles);~~

~~Whereas, To ensure robust information-gathering, proper allocations of Proposition 39 space, and appropriate oversight and reporting to the Board, District staff also currently reviews and verifies charter schools' projected and actual average daily attendance, and monitors and reports charter schools' payment of facilities-related costs and over-allocated space reimbursements in accordance with applicable law; now, therefore, be it~~

Resolved, That the Superintendent shall report back to the Committee of the Whole in ~~90~~ 45 days with a Proposition 39 Charter Schools Co-Location Policy (Policy) recommended for adoption by the Governing Board of the Los Angeles Unified School District;

Resolved further, That the Policy, as operationally feasible and permitted by law, shall enumerate clear guidelines that ~~prohibit co-locations on the District's 100 Priority Schools, prohibit grade span arrangements that negatively impact student safety and build charter school pipelines that actively deter students from attending district schools, prohibit co-locations on schools with special programs such as BSAP, and Community Schools, and prevent co-locations that compromise schools' capacity to serve neighborhood kids, as operationally feasible and permitted by law,~~ avoid Proposition 39 co-locations that: (1) are on school sites with the District's 100 Priority Schools, BSAP schools, and Community Schools, (2) compromise District schools' capacity to serve neighborhood children, and/or (3) result in grade span arrangements that negatively impact student safety and build charter school pipelines that actively deter students from attending District schools, all so that the District can focus on supporting its most fragile students and schools, key programs, and student safety;

Resolved further, That the Policy shall guide District decisions related to all new school co-location requests and shall also be applied whenever existing co-locations change, for reasons including, but not limited to insufficient space, addition of grade levels, and other material revisions to their charter;

Resolved further, That the Policy shall, as permitted by law, modify the ~~D~~district's existing Proposition 39 practices to ~~require~~ ensure the following: more robust information-gathering, including a site visit to the ~~D~~district school before recommending a co-locations, ~~require improved and~~ more frequent verification of charter ~~schools~~' average daily attendance, ~~create Board oversight of~~ a Board vote on the approval of all Alternate Agreements, and ~~improve~~ monitoring, enforcement, and reporting of charter ~~schools~~' payment of ~~co-location fees~~ facilities costs and ~~overallocation fees~~ overallocated space reimbursements;

Resolved further, That the District's annual preliminary co-location proposals, ~~to charters and its~~

final offers, and Alternative Agreements should ~~both~~ all be accompanied by a report to the Board on how the Policy was adhered to in the process; and, be it finally

<u>Resolved</u>, That the Superintendent shall report back in 90 days with a clear plan and timeline for the creation of a redesigned Charter Schools Division page on the district's website or a standalone website which, in addition to its current content, will provide a clearinghouse to the public for information about charter schools, including charter petitions, co-location requests and offers, reports to the Board, Local Control and Accountability Plans, average daily attendance reports, and other relevant data.

**Resolutions Requested by the Superintendent**

7.  Appointment of Member to School Construction Bond Citizens' Oversight Committee

Resolved, That the Governing Board of the Los Angeles Unified School District ratifies the appointment of Ms. Aleigh Lewis, representing the City of Los Angeles Controller's Office, as Member to the School Construction Bond Citizens' Oversight Committee for a two-year term commencing immediately and determines that Ms. Lewis is not an employee, official, vendor, contractor, or consultant of the District.

**New Business for Action Continued**

8.  Board of Education Report No. 030-23/24      **PUBLIC HEARING**
    Division of Instruction                       **NO EARLIER THAN 4:00 P.M**
    Integrated Library & Textbook Support Services (ILTSS)
    (Textbooks and Instructional Materials Certification Resolution) Recommends adoption of the attached resolution certifying the sufficiency of textbooks and instructional materials in the core and required subject areas.

**Adjournment**

Please note that the Board of Education may consider at this meeting any item referred from a Board Meeting 5 calendar days prior to this meeting (Education Code 54954.2(b)(3)). The Board of Education may also refer any item on this Order of Business for the consideration of a committee or meeting of the Board of Education.

Requests for disability related modifications or accommodations shall be made 24 hours prior to the meeting to the Board Secretariat in person or by calling (213) 241-7002.

If you or your organization is seeking to influence an agreement, policy, site selection or any other LAUSD decision, registration may be required under the District's Lobbying Disclosure Code.  Please visit http://ethics.lausd.net/ to determine if you need to register or call (213) 241-3330.

Materials related to an item on this Order of Business distributed to the Board of Education are available for public inspection at the Security Desk on the first floor of the Administrative Headquarters, and at: https://www.lausd.org/site/Default.aspx?PageID=18628&DomainID=1057#calendar73805/20230926/event/69351
Items circulated after the initial distribution of materials are available for inspection at the Security Desk.



**177**

# Los Angeles Unified School District

333 South Beaudry Ave,
Los Angeles, CA 90017

## Board of Education Report

Return to Order of Business

---

**File #:** Rep-051-23/24, **Version:** 1

---

**Rescission of the LAUSD Vaccination Requirement**
**September 26, 2023**
**Office of the Superintendent**

**Action Proposed**:
Authorize the rescission of the Los Angeles Unified School District's ("LAUSD" or "District") COVID-19 vaccination requirement.

**Background**:
On March 4, 2020, Governor Newsom proclaimed a state of emergency within the State due to the threat posed by the Novel Coronavirus (COVID-19) and the Los Angeles County Health Officer issued a Declaration of Local Health Emergency due to the introduction of the COVID-19 cases to the County. Subsequently, on March 13, 2020, LAUSD closed all of its facilities for in-person District administration and operations and school instruction, resulting in the implementation of a distance learning program and remote working through most of the 2020-21 school year. In April 2021, the District began reopening school facilities for in-person learning.

In response to the COVID-19 pandemic, the District implemented a high standard of multi-layered safety measures to effectively mitigate the spread of COVID-19, including testing, masking, ventilation, screening, high quality sanitation measures, and the requirement for all employees and eligible students to be vaccinated. On August 13, 2021, the District issued a directive that all employees be fully vaccinated. The directive required employees to show proof of such by October 15, 2021. The requirement extended to all adults who were on LAUSD campuses (charter school employees for co-located sites; vendors; contractors; volunteers). Following this, the District issued an updated vaccination schedule to employees requiring that all employees receive their first vaccine by October 15, 2021, and their second vaccine by November 15, 2021. Completed vaccine records were required to be uploaded for verification. Separately, the District mandated, but did not enforce a student vaccination requirement in alignment with the state and court rulings. On November 16, 2021, the Board of Education (Board) affirmed the District's COVID-19 vaccination requirement. In addition, the Board declared that all COVID-19 health and safety policies and procedures were applicable to charter schools on District sites, contractors, volunteers, and other adults providing services on District facilities. On December 14, 2021, the Board extended the COVID-19 vaccination requirement as a policy applicable to all charter schools authorized by the LAUSD Board of Education regardless of charter school location.

On February 28, 2023, California's state of emergency for COVID-19 ended. On February 3, 2023, the California Department of Public Health ("CDPH") announced that it is not exploring emergency rulemaking to add COVID-19 to the list of required school vaccinations and any changes to required K-12 immunizations are properly addressed through the legislative process. Instead, the CDPH issued guidance intended to mitigate the impact and spread of COVID-19 to support safe, in-person learning in TK-12 school settings. CDPH's guidelines are in alignment with the state's SMARTER (Shots, Masks, Awareness, Readiness, Testing, Education, Rx) plan to provide resources to support the goal of preventing broad disruption to in-person learning.

---

powered by Legistar™

**File #:** Rep-051-23/24, **Version:** 1

Similarly, on February 1, 2023, the Los Angeles City Council Emergency Order ended. On March 31, 2023, the Los Angeles County Board of Supervisors ended the County's COVID-19 emergency declarations. The termination of the emergency declaration ended both the County's Proclamation of Local Emergency and Declaration of Local Health Emergency for COVID-19 which have been in place since March 2020. With the end of the Los Angeles County COVID-19 emergency declarations, the Los Angeles County Department of Public Health ("LACDPH") aligned its safety measures with federal and state COVID-19 guidance, while continuing to require a few measures at educational institutions to reduce COVID-19 related disruptions.

At worksites and educational settings, COVID-19 isolation and notification guidelines for staff are set by CAL/OSHA. Current Los Angeles County Department of Public Health and CAL/OSHA recommendations are as follows: School employees who have tested positive must isolate at home for at least five days and can only return to their worksite between days six and ten if they are fever-free and wearing a well-fitting mask indoors and around others outdoors except when eating or drinking. Students who have tested positive are also required to isolate at home for five days and, if returning to school between days six and ten, should wear a well-fitting mask when indoors and around others outdoors except when eating or drinking. Students returning between day six and ten may unmask if they have two sequential negative tests taken at least a day apart. Schools are required to notify employees and are recommended to notify students who are close contacts of a confirmed case and provide exposed workers with free testing.

In addition to the setting aside of local and state emergency declarations, the Biden administration ended the Coronavirus Public Health Emergency Declaration on May 11, 2023. On the same month, the World Health Organization Director General determined that COVID-19 no longer constitutes a public health emergency of international concerns.

Presently, LAUSD's COVID-19 vaccination requirement remains in effect with 100% of its employees reporting to District sites fully vaccinated pursuant to the requirements instituted in August 2021. Employees who have reasonable accommodations pursuant to medical reasons or disability, or based on sincerely held religious beliefs have been accommodated at the District's virtual academies if the employee is able to accomplish all essential job duties. Employees have also been granted a reasonable accommodation if the employee has accrued benefit time and/or the ability to seek a permissive leave of absence, in accordance with legal requirements.

At the time of implementation of the District's COVID-19 vaccination requirement, Los Angeles Unified schools had been closed for full time in-person learning for 17 months due to the rapidly changing, deadly virus. The intent with re-opening schools was to preserve in-person learning in the safest environment possible. At the time, even a modest number of positive cases of COVID-19 could have prompted school and classroom closures. Because COVID-19 vaccination reduced transmission and disease severity, it made sense to have a vaccination requirement-to keep schools open for in-person learning.

As a testament to the incredible power of vaccinations and the advancements of science, COVID-19 has now entered the endemic phase. This means that the virus is here to stay, but it is not spreading at a rapid enough pace to overwhelm hospital systems. This also means that while there will continue to be surges of COVID-19, it has entered a state of stability and predictability that comes with other viruses such as RSV and the Flu. In addition, we can use mitigation measures such as encouraging vaccination, masking, testing and educating about good hygiene practices during times when there is a high prevalence of respiratory viruses such as COVID-19. The science has not changed. Vaccines are still safe and effective. We continue to encourage everyone to stay updated on all vaccinations. However, we no longer need a COVID-19 vaccine requirement to keep schools open for in-person learning.

**File #:** Rep-051-23/24, **Version:** 1

**Expected Outcomes**:
If the Board approves the rescission of the COVID-19 vaccination requirement, the District will cease requiring proof of vaccination for new hires, contractors, volunteers, third-party facilities users, and other service providers before they are permitted to provide instructional and other services to schools, students, and offices.

The District will continue to strongly encourage vaccinations for employees, families and students. In addition, in collaboration with our communications team, our medical team will continue to educate our school community about proper hygiene practices and tools such as masking and testing during times of high transmission of respiratory viruses such as COVID-19, Flu and RSV.

The District will continue monitoring the state of COVID-19 and other viruses. Should health conditions necessitate a revisiting of the COVID-19 vaccination requirement, the District will evaluate and bring any recommendation to the Board for consideration.

**Board Options and Consequences**:
A "yes" vote will rescind the COVID-19 vaccination requirement.
A "no" vote will maintain the COVID-19 vaccination requirement.

**Policy Implications**:
The District's COVID-19 Containment, Response and Control Plan will be amended to remove the requirement for proof of vaccination.

**Budget Impact**:
The proposed action in and of itself does not have a budget impact.

**Student Impact**:
The health impact of COVID-19 on healthy children is similar to Flu and RSV. We do not have a vaccine requirement for the Flu and similar to the Flu, we can use mitigation measures such as encouraging vaccination, masking, testing and educating about good hygiene practices during times when there is a high prevalence of respiratory viruses.

**Equity Impact:**
Not applicable.

**Issues and Analysis**:
Los Angeles Unified continues to be committed to providing clean, maintained and well-ventilated school facilities to reduce the spread of respiratory infections and protect students and staff from exposure to other air pollutants including, airborne allergens, wildfire smoke, and transportation related emissions.

The District will continue to maintain and clean schools and offices so they are safe and healthy learning environments for students and workplaces for employees. Facilities Maintenance & Operations (M&O), as part of their quality assurance efforts, regularly surveys and recommends improvements for each school's and administrative facility's custodial program, in addition to conducting inspections and deep cleaning on an annual basis.

To promote optimal ventilation, all HVAC systems are designed to incorporate outdoor air to the greatest extent possible. HVAC repairs, always a critical service call, are elevated to urgent status, and should there be an

**File #:** Rep-051-23/24, **Version:** 1

interruption to HVAC service, portable air conditioning units, fans and/or high-efficiency particulate air (HEPA) purifiers are deployed to affected spaces. The District maintains an inventory of more than 1,650 portable HEPA air cleaning devices and more than 2,800 portable air conditioning units for rapid deployment to classrooms where an HVAC service call has been initiated and fans are not moving fresh air or fans are moving but not providing cool air. The District's inventory will continue to be replenished and/or added to as needed.

Should the Board lift the vaccination mandate, the pending certificated and classified employees who are currently ineligible to perform their duties could be eligible for assignment, and previously separated employees could be eligible to reapply.

**Attachments:**
None.

**Informatives:**
None.

**Submitted:**
09/14/23

**File #:** Rep-051-23/24, **Version:** 1

**RESPECTFULLY SUBMITTED,**

ALBERTO M. CARVALHO
Superintendent

**APPROVED & PRESENTED BY**

PEDRO SALCIDO
Deputy Superintendent,
Business Services & Operations

**REVIEWED BY:**

DEVORA NAVERA REED
General Counsel

____ Approved as to form.

**REVIEWED BY:**

DR. SMITA MALHOTRA
Chief Medical Director

**REVIEWED BY:**

NOLBERTO DELGADILLO
Deputy Chief Business Officer, Finance

____ Approved as to budget impact statement.

## DECLARATION OF JOHN W. HOWARD

I, John W. Howard, declare as follows:

1.      I am an attorney duly licensed to practice before all courts in the state of California and before this Court. I am a partner with the law firm JW Howard/Attorneys, Ltd., counsel of record to Appellants Health Freedom Defense Fund *et al.* ("Appellants") in this action. I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called to do so.

2.      I argued this appeal in Seattle on September 14, 2023. I was also involved in earlier proceedings between the parties in the District Court and thus knew Connie Michaels, the lawyer who led the litigation for Appellees below and who argued the appeal for them on September 14.

3.      During the argument, this Court's panel expressed surprise—at one point "shock"—that LAUSD was still enforcing a mandatory COVID-19 vaccination policy for its employees. After the argument, as we were leaving the courtroom, Ms. Michaels turned to me and said: "What are you going to do when we rescind the mandate?" I interpreted Ms. Michaels' comment to reflect what she believed had been a difficult argument for her client, leading me to believe that LAUSD would quickly repeal its vaccine policy to avoid an adverse decision from this Court.

13

4.      That is what happened. Just twelve days after the argument, LAUSD voted to repeal the vaccine policy. To my knowledge, LAUSD did not consider repealing the vaccine policy until after the oral argument. Without this appeal, the policy would still be in place today and in the future.

Under penalty of perjury, under the laws of the United States of America, I declare that the foregoing is true and correct. Executed this 1st day of November 2023 at San Diego, California.

_____
John W. Howard

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 22-55908**

I am the attorney or self-represented party.

**This brief contains 2,132 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Scott J. Street*          **Date:** November 1, 2023

15

## <u>CERTIFICATE OF SERVICE</u>

***Health Freedom Defense, et al.  v. Megan K. Reilly, et al.***
**U.S. COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
**Case No. 22-55908**

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On November 1, 2023, I electronically filed the **OPPOSITION TO APPELLEES' POST-ARGUMENT MOTION TO DISMISS APPEAL; DECLARATIONS OF JOHN W. HOWARD AND SCOTT J. STREET** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel..

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on November 1, 2023 at San Diego, California.

*/s/ Dayna Dang*_____
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com

16